86 So.2d 181

**Emile J. THOMAN, individually and d/b/a Othom Sales Company,**

v.

**Col. Francis C. GREVEMBERG, Supt. of State Police, et al.**

No. 42530.

Jan. 16, 1956.

Rehearing Denied Feb. 20, 1956.

Gordon Goodbee, Covington, for appellant.

E. Drew McKinnis, C. Wayne Hays, Baton Rouge, for defendants-appellees.

SIMON, Justice.

On May 31, 1954, Emile J. Thoman filed this suit for a declaratory judgment to have certain console model coin amusement machines declared free from seizure and destruction, their not being "slot machines" or gambling devices reprobated by law.

On November 4, 1953, 69 machines admittedly owned by plaintiff were confiscated from various places of storage in the Parish of St. Tammany by officers of the Louisiana State Police Department acting under order of the Superintendent of State Police, Francis C. Grevemberg, and stored in a warehouse in Covington, Louisiana, for evidentiary purposes. The key to said warehouse was delivered to John E. Brewster, clerk of the Twenty-second Judicial District Court.

Plaintiff alleges that these machines are not gambling devices of such a character as to be included in the intent of Act 231 of 1928, LSA–R.S. 15:26.1, but are merely amusement devices. Defendants Grevemberg and Brewster contend that said machines are gambling devices and therefore subject to confiscation and destruction made mandatory by said statute which provides as follows:

"All officers of the state of Louisiana are hereby authorized and empowered, and it is made mandatory and compulsory on their part, to confiscate and immediately destroy all gambling devices known as slot machines that may come to their attention, or that they may find in operation."[1]

At the trial, in order to determine the issue whether the machines seized fall under the condemnation of this statute and are contraband, subject to destruction by the seizing authorities, the trial court received evidence that the machines were so manufactured, designed and constructed as to be capable of use as gambling devices.

The record discloses that plaintiff purchased 69 second-hand machines, and he generally described them as amusement devices without automatic ejection of money or tokens redeemable in money or property.

The evidence further shows that 14 of these machines were what is commonly termed as "horse race machines", capable of being used as automatic pay-off machines without free-play attachments, and the remainder were free-play machines without automatic pay-off attachments. Some of these machines bore federal gambling tax stamps issued for the year 1952, authorizing their use and operation. These machines had all the physical characteristics of slot machines, having a slot for the insertion of coins and a drawer for the pay-off. Each machine was so manufactured that it could be converted from a free-play machine to an automatic pay-off machine within a short time. This conversion entailed merely the insertion of a tube for the conveyance of the coins paid off, the removal of a plug to allow passage of the coins and the removal of a small pin securing the pay-off drawer. The time required for the conversion is approximately from two to five minutes.

---

1. This statute has been construed to embrace the destruction of all gambling slot machines whether they are found to be in operation or not. Schimpf v. Thomas, 204 La. 541, 15 So.2d 880, 882.

The district court rendered judgment in favor of defendants and declared the electrical console machines forming the subject matter of this cause to be slot machines within the intendment of LSA–R.S. 15:-26.1; and plaintiff perfected this devolutive appeal.

In plaintiff's brief and his counsel's oral argument, the only error assigned is the admitting by the district judge of experimental or demonstrative evidence without the laying of the proper foundation for its admission. There is no complaint leveled against the judgment of the lower court holding said machines to fall under the terms of the statute and therefore contraband and subject to mandatory seizure and destruction.

■ ■ During the trial defendants' counsel, having first qualified William H. Nunn as an expert witness, offered to produce in court one or more of the machines and there have its operation demonstrated by said witness. Counsel for plaintiff objected to the demonstration prior to his right to cross-examine the witness to ascertain whether or not the condition of the machines had been altered or changed during the interim from the date of seizure to the date of trial. The trial judge overruled the objection, expressing the belief that plaintiff's rights would be amply protected by cross-examination of the witness when he was tendered and reserving unto him whatever merits his objection would warrant. Manifestly, the trial judge felt that

a physical and visual demonstration would afford the means of more intelligently determining whether or not these machines were gambling devices, notwithstanding the previous testimony of witnesses as to their design and mechanism. Counsel for plaintiff cross-examined this witness at length and at no time thereafter urged any further objection, having, as disclosed by the record, previously acceded to the court's ruling. Under these conditions, in this, a civil proceeding, the mere deferment of the cross-examination of the witness by plaintiff, bearing upon the tampering, if any, with the machines during the period of their custody, cannot be held to be prejudicial to plaintiff's rights.

We are convinced that even without the demonstration there is ample and convincing proof that these machines may be converted into automatic pay-off machines for gambling purposes within a short time by a qualified mechanic.

Plaintiff's effort to convince the court that the design and mechanism of these machines are per se for amusement purposes only is eloquently answered in our recent holding in the case of State v. Ricks, 215 La. 602, 41 So.2d 232, 233. The argument was therein raised that the machines were not fixed to pay off automatically and therefore were not slot machines as condemned by our law. We held:

"The first point that the slot machine is not of the type described by Act No. 231 of 1928 is predicated upon the notion that, be-

cause the machine is mechanically arranged so that it does not automatically eject the prizes that may be won by the player, it is not per se a gambling device.

"The argument cannot be sustained. The evidence shows that the machine was used for gambling; that it has all of the characteristics of a slot machine, other than the automatic ejection of money or tokens redeemable in money or property, or rather, it has been so fixed that it cannot pay off automatically (but it may be converted into an automatic pay-off machine within a short space of time by a qualified mechanic). The statute has for its purpose the immediate confiscation of 'all gambling devices known as slot machines * * *'. It is difficult to discern that the plugging of the automatic pay off has the magical effect of placing the machine beyond the pale of the law."

In the more recent case of Killian v. Craft, 226 La. 374, 76 So.2d 401, we held that the fact that the machines were not in operation at the time of their seizure did not prevent their falling within the provisions of the above statute. We said:

"At the time the sheriff seized the slot machines they were stored in a warehouse in the Town of Leesville, Vernon Parish, having been in storage for two years or more awaiting the permission of the authorities to ship them to the State of Nevada. They were not being operated as gambling devices or otherwise in use at the time they were seized and had not been in use or operated for more than two years. They were so manufactured, designed and constructed as to be capable of being used as gambling devices, if in proper state of repair and working order, and are what are commonly called slot machines. * * *"

Accordingly, for the reasons assigned, the judgment appealed from is affirmed.