REGAN, Judge.
Plaintiff, Admiral C. Vaughan, whose business consists of leasing coin operated amusement machines to proprietors of restaurants, bars and similar establishments in the City of New Orleans, instituted this suit against various city and state officials,[1] endeavoring to enjoin the defendants from destroying a coin operated machine which was leased to the owner of the Fiesta Bar and confiscated therefrom by New Orleans police officers on January 5, 1961, under the authority of a legislative mandate.[2] requiring state officers to seize and destroy “all gambling devices known as slot machines”. He further requested the rendition of a declaratory judgment pronouncing that the machine in question is not a “slot machine”. Alternatively, should plaintiff’s device be declared a “slot machine”, then the act is unconstitutional since it unlawfully delegates legislative authority to administrative officials in that no guides or standards are provided therein, which would enable public officials to determine just what constitutes a “slot machine” under the legislative mandate requiring the destruction thereof.[3]
*845 Defendants excepted to plaintiff’s plea of unconstitutionality, asserting that the statute in question had previously been pronounced constitutional by the Supreme Court. They then answered by virtue of a general denial.
From a judgment in favor of the defendants dismissing plaintiff’s suit, he has prosecuted this appeal.
The record reveals that plaintiff leased a coin operated machine, designated as the Keeney Big Tent, to William Sciapetti, which was installed in the Fiesta Bar, his place of business.
This machine is a floor model and its mechanism is enclosed by a specially designed cabinet. It has a slanting glass face on which are shown various combinations of animals with numbers which indicate the free plays for each scoring combination arranged in seven vertical rows. A player may deposit one, or a maximum of seven, coins, with the scoring combinations automatically advancing from the first column to the seventh, depending upon the number of coins inserted. A meter indicates the total number of free plays (up to a total of 999) accumulated to the credit of the player at any time during the play. There is no slot or receptacle for the delivery of coins or merchandise. The machine is actuated electrically by the insertion of a coin and the depressing of a metal lever by the operator thereof. When play is started lights flicker behind the figures of the various animals, finally stopping and illuminating one figure in each of three columns. If the illuminated figures form a winning combination, additional games foi replay are registered on the meter. The player has no control over the resulting scoring combinations and no skill is involved. A switch is located in the rear of the machine which enables the proprietor of the establishment wherein it is located to remove the number of free plays registered on the meter thereof.
On January 5, 1961, several police officers confiscated the “Big Tent” from the Fiesta Bar after first determining by the insertion of several coins that it was operative. Although they received no pay-off in coin or merchandise, they impounded the machine and charged the bar owner with violating the state gambling law. Plaintiff’s machine was initially in the custody of the clerk of the Criminal District Court for Orleans Parish; it is now in the custody of the clerk of this court, which has afforded us the opportunity of making a minute examination thereof.
Plaintiff initially contends that the “Big Tent” is not a “slot machine” such as is reprobated by virtue of the legislative mandate,[4] which reads:
“All officers of the state of Louisiana are hereby authorized and empowered, and it is made mandatory and compulsory on their part, to confiscate and immediately destroy all gambling devices known as slot machines that may come to their attention, or that they may find in operation.”
Plaintiff then points out that the jurisprudence interpretative of this statute supports the conclusion that the “Big Tent” is not a “slot machine”, since it is not, per se, a gambling device, nor may it be readily converted into one.
Before initiating a rather protracted discussion of the scientific evidence adduced in support of plaintiff’s contention, it is necessary in order to preserve both the intelligibility and continuity hereof to review the jurisprudence interpreting the statute, so as *846 to emphasize plaintiff’s purpose in introducing this evidence.
The first case emanating from the Su-pí eme Court, pertinent to the issue now before us, which interpreted the statute was State v. Ricks.[5] The coin operated machine involved was the traditional one-arm-bandit. It was plugged so that it did not eject coins when it registered a winning combination; however, the lucky player received sticks of peppermint from the proprietor in whose place of business the machine was located. This was substantiated by the testimony of a police officer who actually played the machine and received an over-the-counter pay-off in property. In discounting the fallacy of plaintiff’s contention that the instrumentality was not a slot machine since it was not equipped with an automatic payoff device, the court rationalized thus:
“The evidence shows that the machine was used for gambling; that it has all of the characteristics of a slot machine, other than the automatic ejection of money * * * or rather, it has been so fixed that it cannot pay off automatically (but it may be converted into an automatic pay-off machine within a short spac'e of time by a qualified mechanic) . The statute has for its purpose the immediate confiscation of ‘all gambling devices known as slot machines * * * ’. It is difficult to discern that the plugging of -the automatic pay off has the magical effect of placing the machine beyond the pale of the law.”
The next pertinent rationalization occurred in the case of Thoman v. Grevemberg,[6] wherein a group of coin operated machines were seized and the owner thereof endeavored to have the court pronounce a judicial benediction to the effect that they were not slot machines within the reprobation of the statute. Fourteen of these were race horse machines, which were electronically operated and equipped to eject coins upon the registration of a winning combination. The balance were machines that were designed to register free plays or to eject payment in coins; the type of operation was left to the dubious wisdom or discretion of the machine’s lessee. When confiscated, the machines then were being operated on the basis of the free play alternative; however, the evidence disclosed that they could be easily converted to automatically pay off in a matter of minutes by simply removing a plug so as to permit the insertion of a tube through which the coins could pass and then removing a small pin which only temporarily sealed off the pay out receptacle. Predicated on this evidence, the court reasoned that the optional machines were gambling devices per se because a simple alteration could readily convert them into automatic pay-off machines. In effect, it emphasized the criterion of convertibility of the machine to an automatic pay-off machine, which was previously enunciated in the Ricks case.
A more recent case, decided by the First Circuit Court of Appeal, was Snell v. Brown,[7] which again posed the vexacious question of classification of a coin device as a slot machine. Of three machines confiscated, two were equipped with optional free play or pay-out mechanisms and were similar to the ones discussed in the Thoman case. The third, initially designed as had been the other two, had been converted to strictly a free play machine by removing the pay-out mechanism and welding the money receptacle thereof so that it could not be opened. The court found that the latter machine could be converted into automatic pay-out in approximately forty hours, provided the necessary parts were procurable or available. The fact that all three were susceptible of being converted into an automatic pay-out machine formulated the basis for the court’s rationalization in finally pronouncing that they were all slot machines and therefore fell within the reprobation of the statute.
*847 Thus we are informed from the foregoing cases that the “slot machines” which convinced the courts that they fell within the reprobation of the statute were the traditional mechanically operated “one-arm-bandit” ; [8] and basically the same machine, although a more modern version thereof, which is operated electronically and possesses the automatic pay-off device, and finally, machines which are operated electronically and equipped with the free play device and which are easily convertible into an automatic pay-off type at the option of the lessee thereof.
In any event the fundamental rationalization of the courts, which formulated the ratio decidendi of these decisions, has been to the effect that the machines were obviously gambling devices or easily converted thereto.
In order to distinguish this machine from the ones considered by the courts in the foregoing cases, the plaintiff called as an expert witness Edward P. Krynski, assistant chief engineer of the games division of T. S. Keeney & Co., Inc. Krynski has studied both electrical and mechanical engineering at the Illinois Institute of Technology and has been in the engineering division of coin machine construction and design for approximately eight years. It was stipulated between respective counsel that he was an expert in the design and redesign of coin operated amusement games.
Krynski explained that there are basically three types of coin machines, two of which we have already discussed hereinabove. One is the traditional slot machine, commonly referred to as the one-arm-bandit; it is operated mechanically. Then there exists a more modern version thereof which operates electronically and is equipped with an automatic pay-out device.
The second basic type is a machine that may readily be converted from free play to pay out or vice versa, at the discretion of the proprietor in whose premises the machine is located.
The third type, which the appellate courts have not had posed for their consideration until now, is designed only to register free plays when the operator thereof scores a winning combination.
Krynski, who played a prominent role in the design and construction of the “Big Tent”, testified that it was designed as a replay register machine for amusement only. He stated that the machine cannot be readily converted into an automatic pay-out machine; in fact, he asserted, it would be much easier to “start from scratch” to construct an automatic pay-out machine rather than to attempt to convert the “Big Tent” into one. He conceded, however, that it could be done in a matter of fourteen days by an expert, after procuring the necessary parts, if available, and in addition, designing new components that have not as yet been invented. He further related that the rebuilt device would not fit into the cabinet of the “Big Tent”, thus a much larger one would be required and the end result would be the creation of a “monstrosity”. In the final analysis, and as a practical matter, it does not lend itself to the possibility of conversion.
To rebut this testimony, defendants called William Nunn to testify; his educational background in the field of electronics suffered greatly by comparison; it consisted of a correspondence course in radio that he subscribed to when he was attending high school and a second course which was offered by Gulf Radio and Television School, located in the City of New Orleans. He has been engaged by the state for many years to examine various coin operated machines in order to determine whether the owner thereof owed the state an amusement tax or a gambling tax thereon.
Nunn initially asserted that he could convert the “Big Tent” to automatic pay- *848 answered appeal praying that amount of out in about eight hours; however, he was clearly unable to describe the method he would pursue to effect the conversion. Although he insisted that the converted mechanism could be placed in the same cabinet which now houses the free play equipment, he laboriously qualified this by stating that he would change the machine from a seven-coin maximum play to a two or three coin operation. He conceded that parts would have to be designed to effect such a radical conversion and that the time element involved in having these parts manufactured could not, with any accuracy, be estimated. In conclusion he was forced to increase his estimate of the period of time required to convert from eight to forty hours, yet he could not convincingly or satisfactorily explain the mechanical method that he intended to use to effect the conversion. In the last analysis, the court was afforded very little, if any, assistance by virtue of his testimony, especially when considered in comparison with plaintiff’s expert.
From our evaluation of the evidence, we are compelled to conclude that the “Big Tent” is neither a gambling device per se nor is it susceptible of being readily converted into a gambling device per se. Since the evidence absolutely preponderates to the effect that it would be easier to build an automatic pay-out machine than to convert the “Big Tent”, we are forced to reason that the machine in question, confiscated under the circumstances referred to herein-above, is not a “slot machine” which state law enforcement officers are compelled to confiscate and destroy in conformity with the mandate contained in the statute.
In reaching this result, we are fully cognizant of the fact that the game requires no skill and it is difficult for us to conceive of the existence of a mentality sufficiently moronic to derive amusement 999 times from watching electric lights flicker, stop, and then illuminate the figures of various animals. As a practical matter, we cannot believe that the game in itself offers any enjoyment to a player, unless the motivation of acquiring money actually exists. We also realize that the free plays registered are probably surreptitiously converted into coins by the proprietor in whose establishment the machine is placed; but the antiquated statutory law[9] of this state has the legal effect of forcing us to draw the judicial veil so tightly around us that we are virtually compelled to occupy the unenviable category of the proverbial three monkeys, who were unable to know what everyone else already knew.
To reiterate for the purpose of emphasis, the statute instructs public officials to seize “gambling devices known as slot machines”. When the statute was enacted in 1928, the law enforcement officer was afforded a definite standard or yardstick to guide his seizure and destruction of the machine, because in 1928 and for some years thereafter, the word “slot machine” was synono-mous with the device well-known as and easily recognized as the one-arm-bandit. Since that time coin operated machines of a different design have been marketed and also have been declared “slot machines” within the reprobation of the statute; however, in these cases, there was either evidence of gambling offered to support the confiscation or the instrumentality was per se a gambling device or could be readily converted into one.
In ■ order tq enforce the constitutional provision outlawing gambling in this state, there is no question but that the legislature can instruct officers to seize and destroy gambling devices known as slot machines. However, in order to justify the seizure under the statute, we think it is first necessary that evidence be offered to show that the instrumentality seized is in fact a gambling device.
*849 In this case, the “Big Tent” was confiscated without evidence to the effect that there was an over-the-counter pay-off involved in its operation. Further, the machine itself does not reflect the fact that it is a gambling device. In view of what we have said herein, we are unable to conclude that the “Big Tent” is a slot machine such as is reprobated by the statute, without subjecting the act to an unconstitutional interpretation. There is no guide, standard or yardstick established by the statute, insofar as this machine is concerned, that would enable a law enforcement officer to determine that this is in fact a “gambling device known as a slot machine”. Were we to permit the destruction of the “Big Tent” herein seized, in effect we would permit ministerial officers to amend the statute to include a device which the statute was not originally intended to cover. -This is especially true in view of the fact that there is no evidence of gambling before us.
In addition to what we have said hereinabove, the law which is posed for our interpretation involves a forfeiture and, therefore, must be strictly construed.[10] The statute has for its purpose the destruction of gambling devices, and without proof that this in fact is a gambling device, a careful construction of the statute compels us to reason that the “Big Tent”, confiscated under the circumstances existing herein, is not a “slot machine” within the reprobation thereof.
For the reasons assigned, the judgment appealed from is reversed, and it is now ordered, adjudged and decreed that the defendants be, and they are hereby enjoined from destroying plaintiff’s property, known as the “Big Tent”, and further, they are ordered to return same to plaintiff.
It is further ordered, adjudged and decreed that the “Big Tent”, confiscated under the conditions existing herein, is not a “slot machine” which law enforcement officers may seize in conformity with the rationale of LSA-R.S. 15 :26.1; however, we specifically limit this conclusion to the facts developed herein.
Reversed and rendered.

. The named defendants are Richard A. Dowling, district attorney for the Parish of Orleans; Joseph Giarusso, superintendent of the New Orleans Police Department; Edward A. Haggerty, Sr., clerk of court for the Orleans Parish Criminal District Court; Jack P. P. Gremillion, attorney general for the State of Louisiana; and the City of New Orleans. Defendants Dowling and Gremil-lion pleaded the exception of mis-joinder of parties defendants, which was maintained; therefore, this matter was dismissed as tó these defendants and the dismissal has not been appealed. The defendant clerk of the Criminal District Court is impleaded only because he bad custody of the machine when suit was filed. The real parties in interest, therefore, are the City of New Orleans and the New Orleans Police Department.

. LSA-R.S. 15 :26.1.

. In 1928, when Act 231 was passed, there existed no confusion about what constituted a slot machine; it was well-known as the one-arm-bandit and easily recognized as such by the seizing officer. However, the legislature has obviously *845 not kept pace with the manufacturers of these machines in that they have scientifically striven to circumvent the law of 1&28 and since judicial power is never exercised for the purpose of giving effect to the will of the judge, but always for the purpose of giving effect to the will of the legislature, our hands are thus frequently tied by the Gordian knot.

. BSA-R.S. 15:26.1.

. 215 La. 602, 41 So.2cl 232, 233 (1949).

. 229 La. 529, 86 So.2d 181.

.La.App., 104 So.2d 242.

. Which for all practical purposes was the only type of machine existing when the statute was enacted in 1928.

. This could be effectively remedied by the enactment of a modern version of the 1928 statute, in which case we would be provided with the necessary judicial tools •with.which to work. • ■

. Armbruster v. Behan, 3 .Orleans App. 184.