HAMLIN, Justice.
 

 In the exercise of our supervisory control (Art. VII, Sec. 11, La.Const.1921, LSA) we directed certiorari to the Court of Appeal, Fourth Circuit, so that we might review its judgment which reversed a judgment of the district court, enjoined defendants from destroying plaintiff’s property, known as the “Big Tent,” and ordered defendants to return same to plaintiff. Specifically limiting its conclusion to the facts
 
 *393
 
 developed herein, the Court of Appeal further decreed that the “Big Tent” is not a “slot machine” which law enforcement officers may seize in conformity with the rationale of LSA-R.S. 15:26.1. (La.App., 136 So.2d 843.)
 

 The questions presented for our determination are, first, whether “Keeney’s DE LUXE BIG TENT”
 
 [1]
 
 coin-operated machine is or is not a slot machine reprobated by LSA-R.S. 15 :26.1, and, second, the constitutionality vel non of said statute.
 

 Plaintiff is the owner of the controversial machine herein involved. While leased to the proprietor of the Fiesta Bar, the machine was seized and confiscated by officers of the New Orleans Police Department acting under the alleged authority of LSA-R.S. 15 :26.1, which recites :•—-“All officers of the state of Louisiana are hereby authorized and empowered, and it is made mandatory and compulsory on their part, to confiscate and immediately destroy
 
 all gambling devices known as slot machines
 
 that may come to their attention, or that they may find in operation.” (Emphasis supplied.)
 

 Plaintiff brought the present proceedings, in which he prayed that defendants be enjoined from either destroying, or seeking to have his coin operated amusement machine, styled “Big Tent,” Serial No. KE1197, destroyed, and from seizing, confiscating and/or destroying machines of an identical nature therewith belonging to and owned by him. Plaintiff further prayed that there be a declaratory judgment decreeing that his machine, “Big Tent” coin-operated amusement machine, Serial No. KE1197, is not a “slot machine” or gambling device within the scope, operation and purview of LSA-R.S. 15:26.1. Alternatively, plaintiff prayed that the court decree the provisions of LSA-R.S. 15:26.1 unconstitutional, null and void.
 

 The present writ was granted at the instance of the defendants, particularly the City of New Orleans, who allege that the Court of Appeal committed the following errors:
 

 “In rendering a declaratory judgment for plaintiff below, reversing the judgment of the trial court.
 

 “In holding that the ‘Keeney Big Tent’ is not a slot machine.
 

 “In enjoining the defendants from destroying this ‘Keeney Big Tent’ and from seizing other similar machines belonging to plaintiff-respondent.
 

 “In granting injunctive relief to a plaintiff who failed to show he was justly and conscientiously seeking same, rather than one whose livelihood comes from leasing of gambling devices, as he admits in his original petition herein.”
 

 
 *395
 
 ■...'Keeney’s DE LUXE BIG TENT (Hereinafter designated as “Big Tent”) is described by the Court of Appeal as follows:
 

 ’‘This machine is a floor model and 'its mechanism is enclosed by a specially designed cabinet. It has a slanting glass face on which are shown various combinations of animals with numbers which indicate the free plays for each scoring combination arranged in seven vertical rows. A player may deposit one, or a maximum of seven, coins, with the scoring combinations automatically advancing from the first column to the seventh, depending upon the number of coins inserted. A meter indicates the total number of free plays (up to a total of 999) accumulated to the credit of the player at any time during the play. There is no slot or ■receptacle for the delivery of coins or merchandise. The machine is actuated electrically by the insertion of a coin and the depressing of a metal lever by the operator thereof. When play is started lights flicker behind the figures of the various animals, finally stopping and illuminating one figure in each of three columns. If the illuminated figures form a winning combination, additional games for replay are registered on the meter. The player has no control over the resulting scoring combinations and no skill is involved. A switch is located in the rear of the machine which enables the proprietor of the establishment wherein it is located to remove the number of free plays registered on the meter thereof.”
 

 Article XIX, Section 8, of the Louisiana Constitution of 1921, condemns gambling as a vice; LSA-R.S. 14:90 defines gambling as “the intentional conducting, or directly assisting in the conducting, as a business, of any game, contest, lottery, or contrivance whereby a person risks the loss of anything of value in order to realize a profit”; and, LSA-R.S. 15:26.1 denotes a slot machine as a gambling device. This Court has also repeatedly held that slot machines are contraband and are therefore subject to destruction, and that such destruction may take place whether the machines are
 
 in
 
 operation or' not. Colonial Country Club v. Paul, 19 La.App. 365, 140 So. 168; Schimpf v. Thomas, 204 La. 541, 15 So.2d 880; State v. Ricks, 215 La. 602, 41 So.2d 232; Killian v. Craft, 226 La. 374, 76 So.2d 401; Thoman v. Grevemberg, 229 La. 529, 86 So.2d 181. We specifically held in the Ricks and Craft Gases that slot machines are gambling devices. Thoman v. Grevemberg involved electrically operated coin machines so manufactured that they could be converted from a free-play machine to an automatic payoff machine within a short time—two to five minutes; the machines were “fixed” so as to register free plays, but were held by this Court to be slot machines.
 

 
 *397
 
 The following statement ’ from United States v. Ansani, D.C., 138 F.Supp. 454, is pertinent to a determination of whether the “Big Tent” is a slot machine:
 

 “An object is that which it is in objective reality. If, in placing a label or name on that object by which it later will be known, a word or term is chosen that describes that object’s accidental qualities, rather than those qualities that the object has of its very essence, then that object does not cease to be that which it is in objective reality merely because those accidental qualities are later removed. The label or name by which that object is known succeeds, by common usage, to mean that which it is in objective reality. Thus, in naming that which was to be known as a ‘slot machine,’ the word ‘slot’ was joined with the word ‘machine.’ The word ‘slot’ describes an accidental quality of that which is now known as a ‘slot machine’ and does not describe that which a slot machine has of its very essence. It makes little difference, therefore, whether a slot machine has been deslotted or not as that machine continues to be a slot machine, altered or not.
 

 “Thus, a ‘slot machine’ has, by common .usage, become to be known as any device which employs drums or reels, with the familiar insignia théreon which, when activated either mechanically or electrically after the payment of the required consideration, might entitle a person, by the application of an element of chance, to winnings payable in money or property. A slot machine remains such whether the required consideration for the operation of the machine is inserted into the machine or whether it is paid over the counter to the owner of the premises or his emi ployees. Similarly, a slot machine remains such whether the winnings are delivered automatically or whether they are paid over the counter.” See, 24 Am.Jur., Gaming and Prize Contests, Sec. 35, Slot Machines, p. 422. ■ •.
 

 The “Big Tent” was produced and operated when this matter was argued before this Court; after a demonstration of its mechanism, it became readily apparent that the metal lever in the front of this machine is for the same purpose as the lever' on the side of the coin-operated machine commonly known in the vernacular of the street and in the jurisprudence as the “one armed bandit.”
 
 [2]
 
 Both machines are put into operation and play is commenced by the pressing or pulling of the lever. The “Big Tent” is electrically operated; the “one armed bandit” is usually manually operated. Both
 
 *399
 
 machines can be converted from non-ejecting coin machines to coin ejecting machines ; a longer time is required to so convert the “Big Tent,” but the end result is the same. These are distinctions without a difference.
 

 We do not find that the element of time for conversion is of any significance. In the recent case of Snell v. Brown, La.App., 104 So.2d 242, wherein the time element of conversion was discussed, the Court of Appeal, First Circuit, in affirming a judgment of the trial court which held that the machines were slot machines, stated:
 

 “The machines involved are coin insertion machines and there is no skill exercised by the player in playing them. After the player deposits his initial coin or coins, it is possible for him to secure free games on the machines and it is possible for him to cash in these free games for an over-the-counter payoff because the record shows that these free games may be cancelled, erased and removed from the machines by merely pressing a button located in the rear of the machine.
 

 * * * * * *
 

 “The distinction at issue is the element of time necessary to convert these machines into automatic pay-offs. In the case at bar it takes up to 40 hours and perhaps less for a competent mechanic to do so. In the cases heretofore decided by the Supreme Court it took a matter of minutes to remove the plug in order to restore the machines to good working order.
 

 “We see no error in the opinion of the District Court and for these reasons the judgment is affirmed.”
 

 Herein, the trial court and the Court of Appeal both found as a fact that the “Big Tent” requires no skill for its operation, and that it does not afford amusement nor enjoyment to a player unless the motivation of acquiring money actually exists. The Court of Appeal further realized that the free plays registered were probably surreptitiously converted into coins by the proprietor in whose establishment the machine was placed; it concluded, however, that, “the antiquated statutory law of this state has the legal effect of forcing us to draw the judicial veil so tightly around us that we are virtually compelled to occupy the unenviable category of the proverbial three monkeys, who were unable to know what everyone else already knew.”
 

 We do not find that there has to be proof that money was passed over the counter for the free plays in order to constitute the “Big Tent” a slot machine or gambling device.
 

 “It will be observed that the denounced engagement is one ‘whereby money or other thing may be won or lost’.
 
 *401
 
 The ‘other thing’ which may he won or lost is not confined to money, nor to corporeal articles of money value. Also it is true that the winning of the right to a replay without any additional deposit possesses the value of a nickel, the amount of its cost. Therefore, the player, if successful, wins the value of a nickel as invested in such an engagement. But there is also a plus value, which is the chance of obtaining another or a number of other free rights to additional plays. Therefore, it would seem that the position of defendant’s counsel—that the prize to be won or lost is not embraced by the words ‘other thing"—is illogical and without foundation.” Steely v. Commonwealth, 291 Ky. 554, 164 S.W.2d 977.
 

 “Free games might not be much of a prize for some, but for others they furnish an irresistible lure. It is quite conceivable that a person having won a number of free games might receive an offer from a by-stander for the privilege of playing out the credited number posted on the backboard of the machine. Such a potentiality furnished by the machine is clearly a thing of value, slight as it is. Where, as here, there is reason to believe that the free-game device is being used at once to implement and to conceal the full extent of a gambling scheme, the courts will be quick to find that the requisite value exists to bring the contrivance within the statute.” State v. Bally Beach Club Pinball Machine, 119 Vt. 123, 119 A.2d 876.
 

 “It is difficult to discern that the plugging of the automatic pay off has the magical effect of placing the machine beyond the pale of the law.” State v. Ricks, 215 La. 602, 41 So.2d 232. See, People v. Gravenhorst, Sp. Sess., 32 N.Y.S.,2d 760; Savoy Vending Co. v. Valentine, 178 Misc. 1, 33 N.Y. S.2d 324.
 

 “Under the facts in this case and under the authorities herein cited, we must conclude that a coin operated non-payout pin table with free play feature is a gambling machine. The owners of these machines require a price to be paid for operating them. While there may be some skill in operating the machines, as demonstrated to the Court at the hearing, the score the player receives varies with each game and is the result of chance. Depending upon that score the player either receives or does not receive a prize in the form of additional free games and additional amusement. These machines have all the elements of a gambling machine, namely, consideration, chance and prize. They do not give a certain uniform return value for each coin deposited. The varying scores arc conducive to side wagers. The
 
 *403
 
 owner could easily agree to pay off the winner with money instead of playing balls.” Holliday v. Governor of State of South Carolina, D.C., 78 F.Supp. 918, affirmed 335 U.S. 803, 69 S.Ct. 56, 93 L.Ed. 360. See, 38 C.J.S. Gaming § 96, p. 157 et seq.; 148 A.L.R., p. 892.
 
 [3]
 

 Plaintiff did not call the proprietor ■of the Fiesta Bar, nor any of his employees ■or customers, to testify as to the manner or ■system employed in operating the “Big-Tent” in the Fiesta Bar. This failure must be construed against plaintiff. Walters v. Coen, 228 La. 931, 84 So.2d 464; Perez v. Meraux, 201 La. 498 ; 9 So.2d 662, Prince v. Liberty Mutual Insurance Co., La.App., 106 So.2d 736; Malveaux v. Buller, La.App., 135 So.2d 368; Melancon v. Texas Co., 230 La. 593, 89 So.2d 135. Cf. State v. Barbee, 187 La. 529, 175 So. 50.
 

 From our personal observation of the “Big Tent,” a study of the evidence of record, and an examination of the jurisprudence of this state and that of a number of our sister states, we conclude that the “Big Tent” is a gambling device known as a slot machine; its existence is purely, simply, and only, for gambling purposes; it is neither for enjoyment nor amusement. It requires no skill for its operation.
 

 Plaintiff asserted that the “Big Tent” did not fall within the purview of LSA-R.S. 15:26.1; defendants averred that it was within the confines of the statute. “It is an elementary rule of law that one who asserts a fact must carry the burden of proof and that fact must be established by- a reasonable preponderance of the evidence.” Newsom v. Temple, La.App., 66 So.2d 357. In civil cases, a preponderance of the evidence constitutes sufficient proof. Adams v. Germain & Boyd Lumber Co., 130 La. 920, 58 So. 815; Johnson v. Smith-Douglas Co., Inc., La.App., 61 So.2d 520. The preponderance of the evidence herein is to the effect that the “Big Tent” is a slot machine. “To the judge some things will be self-evident; others will be proven by senses; and, there are other subjects which address themselves to no palpable standard of truth, but to human experience of human motives.” Gilbert v. Heintz, 231 La. 535, 91 So.2d 784. Reason dictates that the “Big Tent” was designed for no other purpose than gambling, which is reprobated by law.
 
 [4]
 

 
 *405
 
 Plaintiff-respondent attacks the constitutionality of LSA-R.S. 15:26.1, alleging in his brief:
 

 “Alternatively, respondent attacked the constitutionality of the provisions of LSA-R.S. 15:26.1 recognizing fully, and not being unmindful that this Court has held the statute to he constitutional in the case of State v. Ricks, 215 La. 602, 41 So.2d 232. However, in the Ricks case, supra, the constitutionality of Act 231 of 1928 was attacked on the basis that it deprived one of property
 
 without due process of law
 
 in violation of Article I, Section 2, La.Const., and the Fifth and Fourteenth Amendments to the Constitution of the United States of America. , :
 

 “Respondent’s contention at this point is not one regarding the deprivation of one’s property without due process of law, but is levelled squarely on the proposition that the statute would delegate legislative powers to ‘all officers of the State of Louisiana’ in violation of Article III, Section 1 of the Constitution of the State 'of Louisiana should this Court construe and hold this particular machine to be a ‘slot machine’. This statute (LSA-R.S. 15:26.1) would then be subjected to an unconstitutional interpretation as commented upon hereinafter.
 

 * * * ‡ 4?
 

 “It is submitted, therefore, that the Legislature in 1928 intended only to denounce gambling devices then commonly known as ‘slot machines’ (one-armed bandits). Since 1928 the Legislature has not seen fit to amend the stat-: ute either to define a gambling device, in the broad, sweeping manner, and after the fashion of the statute enacted by the Congress of the United States in 1951 (The Johnson Act—15 U.S.C.A. 1171 et seq.), or to define a slot machine to include within its definition coin operated machines which are not automatic pay-off devices but which may be converted readily to incorporate within their operation automatic payout mechanisms.”
 

 Statutes designed to prevent gambling are within the police power vested in the states. Holliday v. Governor of State of South Carolina, D.C., 78 F.Supp. 918, affirmed 335 U.S. 803, 69 S.Ct. 56, 93 L.Ed. 360. LSA-R.S. 14:90 recites what “Gambling” is, and in State v. Davis, 208 La. 954, 23 So.2d 801, 809, we said that, “Defendant’s alternative contention that the statute forming the basis of the information is vague, indefinite and uncertain and, therefore, un
 
 *407
 
 constitutional (all of which is urged under bills of exceptions 1 and 17), is without merit. In the recent case of State v. Varnado Blackwell, La.Sup., [208 La. 319,] 23 So.2d 106 (rehearing refused June 5, 1945), it was held that Article 90 of the Criminal Code is not vague in its definition of gambling.”
 

 We believe that our findings, supra, and the jurisprudence we have cited and quoted, set forth the general characteristics of a “Slot Machine” reprobated by LSA-R.S. 15:26.1. We do not find that there has been any unlawful delegation of legislative power to the police officers of the State of Louisiana in authorizing and empowering them to confiscate and immediately destroy gambling devices known as slot machines. As a general rule, it is presumed that a public official discharges his duty or performs an act required by law in accordance with the law and the authority conferred upon him, and that he acts fairly, impartially, and in good faith. 31 C.J.S., Evidence § 146, p. 798 et seq.; Staring v. Grace, La.App., 97 So.2d 669; Wright v. Cyprian, La.App., 96 So.2d 882; State ex rel. Richardson v. Board of Trustees, Teachers’ Retirement, Etc., La.App., 29 So.2d 489; State ex rel. Todd v. Mills, 191 La. 1, 184 So. 350.
 

 In State v. Ricks, 215 La. 602, 41 So.2d 232, 235, we held that should an officer seize and destroy anything other than the gambling slot machines condemned by the Legislature, the owner would have a civil remedy for the unlawful act of the officer. Therefore, should LSA-R.S. 15:26.1 be improperly administered, plaintiff would not be without a remedy.
 

 For the reasons assigned, the judgment of the Court of Appeal, Fourth Circuit, is reversed and set aside. The judgment of the trial court is affirmed. All costs are to be paid by plaintiff.
 

 [1]
 

 . The machine actually hears this inscription.
 

 [2]
 

 . See Footnote 2, State v. Ricks, 215 La. 602, 41 So.2d 232, 234; Vaughan v. Dowling, La. App., 136 So.2d 843, 847.
 

 [3]
 

 . Cf. 148 A.L.R. 879 et seq.; State v. Greenwood, 186 Kansas 687, 352 P.2d 434; People v. One Machine Known as “Circus Days,” 23 Ill.App.2d 480, 163 N.E.2d 223; State v. Barbee, 187 La. 529, 175 So. 50.
 

 [4]
 

 . “The court is of the opinion that more than sufficient has here been shown to demonstrate the utter lack of proof that the machines taken from plaintiff are not within the purview of section 982 of the Penal Law. Doubt, within reason, 'should halt the hand of the defendant. But there is no such doubt. Judicial discretion, within reason, must permit the defendant to continue in the performance .of a proper public duty. * * * ” Savoy
 
 Vending Co., Inc.,
 
 v. Valentine, 178 Misc.
 
 *405
 
 1, 33 N.Y.S.2d 324. Should LSA-R.S. 15:26.1 be inserted in the place of “section 982,” we find that the foregoing reasoning is applicable to the instant matter.