306 So.2d 758 (1974)
Mrs. Myra Hayward, wife of/and Joseph W. MARION, Sr.
v.
NEW ORLEANS PUBLIC SERVICE, INC.
No. 6567.
Court of Appeal of Louisiana, Fourth Circuit.
December 30, 1974.
Rehearing Denied February 13, 1975.
Writ Refused April 18, 1975.
*759 Sidney G. Roos, Roos & Roos, New Orleans, for Mrs. Myra Hayward, wife of/and Joseph W. Marion, Sr., plaintiffs-appellees.
C. B. Ogden, II, New Orleans, for New Orleans Public Service, Inc., defendant-appellant.
Polack, Rosenberg, Rittenberg & Endom by Franklin V. Endom, Jr., New Orleans, for Orleans Parish School Board, intervenor-appellee.
Before REDMANN, BOUTALL and BEER, JJ.
BOUTALL, Judge.
This case involves an intersectional collision between a streetcar and an automobile. There were only three witnesses at the trial of this matter, the plaintiff (operator of the automobile), the streetcar motorman and a passenger on the streetcar. Plaintiff, Mrs. Myra Marion, testified that she was driving on St. Charles Avenue in a westerly direction and that as she passed the intersection of Jefferson Street and St. Charles Avenue she notices a streetcar stopped there. This streetcar was headed in the same direction as plaintiff. She testified that she made a left turn onto the neutral ground at Octavia Street and that as she did this she noticed a streetcar on the neutral ground tracks approximately a block and a half away, headed in her direction. The traffic on St. Charles Avenue moving in an easterly direction was *760 very heavy so that she was forced to wait on the tracks for the traffic to clear. While she was waiting she glanced down the tracks and noticed that the streetcar that had been one and a half blocks away was now half a block away and coming in her direction. When she looked down the tracks again the streetcar was nearing her, she could not move out into the traffic and as she states she "froze" just before the streetcar struck her car. Mrs. Marion stated that she had been on the tracks about three to four minutes before the impact. She received a strain of the neck and shoulder requiring two months of treatment.
The motorman who operated the streetcar had a much different story. He testified that he was approaching the Octavia Street intersection and had slowed down since this was the custom when streetcars traversed intersections, when the plaintiff's vehicle turned in front of the streetcar. He stated that he was about 20 to 25 feet from the intersection when the automobile turned into his path. When he struck the vehicle his speed was about 5 miles per hour.
The testimony of Raymond Vega, the passenger, is essentially the same as that of the motorman. He also testified that the streetcar was 20 to 25 feet from the intersection when the plaintiff's automobile turned onto the tracks. He further testified that the automobile never came to a stop on the tracks but was still moving when struck by the streetcar.
Despite the rather familiar state of the testimony, on this appeal we are not faced with the usual issue of a judgment based solely on the credibility of the witnesses. The trial judge rendered judgment for plaintiff because of two specific conclusions he drew from the evidence presented. We find error in those conclusions.
The trial judge stated in his oral reasons for judgment:
"I'm going to render judgment in favor of the plaintiff. I'm impressed with the testimony, I don't see how the accident could have occurred if the youngster's testimony, while I respect him and know he's telling it like he remembers it but if his estimate of the distance is correct there couldn't have been a collision the way it actually occurred. And I'm also impressed by the fact the defendant offers but one witness and does not offer the other streetcar driver nor any negative indication as to why he's not brought here but the witness says there was in fact another streetcar driver and nobody contradicts that. * * *"
The first conclusion that the trial judge used to base his decision on is that Mr. Vega's testimony as to distance is an impossibility. We have searched this young man's testimony very carefully and we find no such discrepancy or glaring impossibility. His testimony was simple and direct. He saw plaintiff's car traveling down St. Charles Avenue in a westerly direction and it turned in front of the streetcar when the streetcar was approximately 20 to 25 feet from the intersection. We cannot hold such a witness to precise mathematical certainties, and, indeed his version of the collision seems reasonable. See for example Bourgeois v. Francois, 245 La. 875, 161 So.2d 750 (1964).
We find that the testimony of young Vega clearly shows that the accident could have occurred just as he said it did and since his testimony is corroborated by that of the motorman we feel the evidence preponderates in the defendants' favor.
The trial judge also based his judgment on the fact that defendant failed to call the operator of the streetcar that plaintiff testified was stopped at the intersection of Jefferson Street and St. Charles Avenue. From this fact the judge made the inference that the witnesses' testimony would have been adverse to defendant's cause. We cannot agree with this conclusion.
*761 It has long been a rule in Louisiana that the failure of a party to call a witness under his control and who possesses peculiar knowledge essential to that party's cause creates a presumption that the witness's testimony will be adverse to that party. Vaughan v. Dowling, 243 La. 390, 144 So.2d 371 (Supreme Court 1962); Walters v. Coen, 228 La. 931, 84 So.2d 464 (Supreme Court 1956); Pearlstine v. Mattes, 223 La. 1032, 67 So.2d 582 (Supreme Court 1953).
Plaintiff was the only witness to testify as to the existence of another streetcar motorman. It was her testimony that created the presumption, in the trial judge's view, and it is her testimony that destroys this presumption in our view. Mrs. Marion testified that after the accident she got out of her car and held a rather brusque conversation with the motorman of the streetcar that struck her. She further testified:
"So after a time, there was really I imagine a streetcar full of people did leave, and I imagine he called Public Service and a representative came.
"The representative talked to me, the policeman came and talked with me first and he got my version of what happened. A Public Service representative came along and got my version of what happened. The streetcar which was parked when I made my turn, the one that was parked going toward Carrollton Avenue by this time had arrived on the scene and this motorman came over to me and spoke very assuredly to me and really tried to comfort me.
"By that time some of my co-workers heard of my"
From this testimony it is clear that the other streetcar did not arrive at the scene of the accident until sometime after the accident had occurred. The record does not disclose and we fail to see how this other motorman could possess knowledge of material facts peculiar to defendant's cause. Feehan v. Travelers Insurance Company, 251 So.2d 534 (La.App. 1st Cir., 1971). Defendant produced the operator of the streetcar involved in the accident and one independent witness. We feel this is sufficient to discharge its burden of defense, and no presumption for failure to call the other witness should arise.
For the foregoing reasons the judgment of the trial court is reversed and plaintiff's suit is dismissed. Costs are assessed to plaintiff-appellee.
Reversed and rendered.
REDMANN, J., dissents.
REDMANN, Judge (dissenting).
The trial judge believed plaintiff rather than defendant's motorman and the independent witness. The independent witness not only estimated the distance in feet but also as equivalent to the distance between two walls in the trial courtroom. Also, defendant knew long before trial that the petition alleged the presence of the second streetcar. I am unable to conclude that the underlying credibility evaluation is reversible, despite the fact that motorman and witness told basically the same story, namely that plaintiff's car turned into the intersection when the streetcar was so close that it could not stop.
I would affirm, not because I am satisfied that the trial judge's credibility evaluation is correct, but because I am unable to say it was incorrect.