MARVIN, Judge.
The Querbes plaintiffs appeal the rejection of their demands
(1) Against the City to rezone property from residential (R-l) to business (B-2) classification for particular use as a retail gasoline service station;
(2) Against the City for specific performance under its contract in 1969 with plaintiffs for the placing of fill dirt on the property; and in the alternative if specific performance be denied against the City, then
(3) For damages against defendant, Jesse C. McLemore, a surveyor and an alleged *546 agent of plaintiffs, to whose satisfaction the fill-dirt contract of 1969 was to be performed by the City.
We affirm the lower court.
The property concerned in this litigation comprises approximately one acre situated in the southeast quadrant of the Southfield Road and East Kings Highway intersection in Shreveport. Almost .7 acre lies in the bed of Old River while .34 acre is above the bank of Old River and is immediately suitable for development. On the south of the Querbes property is a fenced tract belonging to SWEPCO,[1] on which is situated a transformer station of SWEPCO’s power distribution system.
Pertinent details and surrounding zoning classifications from plats in the record are reproduced on this drawing by the court, roughly to scale:

*547

Plaintiffs propose to lease the tract in question for use as a Texaco service station. It is a policy of the City Planning (Zoning) Commission and the City Council to consider the proposed use of property where rezoning is sought. It is obvious from the plat, and the City readily admits, that the plaintiffs’ tract is effectively removed from commerce when the R-l residential classification is continued.
The City agrees that the property should be designated commercial but for a use other than a retail gasoline service station. Plaintiffs acknowledge that they are privileged, under the City zoning procedures, to apply for rezoning for other commercial uses at six month intervals.
The City declines to rezone the property for use as a service station because of factors such as the size, shape and location of *548 the property; the existing traffic load on the adjacent streets (a service station being a “high traffic use”); and because of the existence of the six-foot fence surrounding the SWEPCO tract south of the property.[2] This fence affects the sight-distance requirements under the zoning regulations for service stations. These factors generally relate to traffic and pedestrian hazards and public safety. Neighboring residential property owners appeared at the zoning hearings to oppose the rezoning, contending the nuisance effect of a service station. Possible pollution of Old River, and the prospective decline of value in residential properties.
The Louisiana Supreme Court in a recent case stated the applicable law.
“The authority to enact zoning regulations flows from the police power of the various governmental bodies; zoning is a legislative function . . . Courts will not and cannot substitute their wisdom for that of a legislative body or other zoning authority except when there is an abuse of discretion or an excessive use of power. However, the exercise of a police power in zoning cannot be made without substantial relation to the health, safety and general welfare of the public.” Four States Realty Co. v. City of Baton Rouge, 309 So.2d 659, 672 (La.1975). (citations omitted).
See also Archer v. City of Shreveport, 85 So.2d 337 (La.App.2d Cir. 1956).
Plaintiffs complain that the City was unduly influenced by the vocal opposition of the neighboring residential property owners. The trial court found that plaintiffs failed in the burden of showing the action of the City had no real or substantial relation to the public health, safety or general welfare. We find no manifest error in this respect because of the several factors affecting public safety summarized above.
THE FILL-DIRT ISSUES
In 1968, the Querbes family, including plaintiffs, donated property in the area to the City with several conditions. One of these conditions was the City would “fill and bring up to grade [the property sought to be rezoned] . . . satisfactory to donors or J. C. McLemore . ..” McLemore is the defendant against whom plaintiffs seek a judgment for his alleged neglect in not requiring the City to completely fill to grade the property in question.
The City formally accepted the conditional donation by resolution in 1969 and proceeded to fulfill the conditions. The fill-dirt issue arises because the obligation to “fill and bring up to grade” does not explicitly state whether it was to apply only to the area of the property above the high bank of Old River or as well, to the area of the property below the high bank of Old River.
When the donation, acceptance and implementation of the conditions occurred, this property was owned with other properties by the Querbes family and was under the management of Justin Querbes. Defendant McLemore, a surveyor, was a friend of Justin Querbes and was often employed by him with respect to Justin Querbes’ management of family properties. In September, 1969, the Querbes family partitioned its properties and the tract in question became owned exclusively by the plaintiffs in this action (Andrew Querbes, Jr. and his family). Andrew Querbes, Jr. then assumed the responsibility of managing this and other property.
Defendant McLemore consulted with Justin Querbes regarding the 1968 donation to the City. He testified that it was his understanding that only the portion of the property above the high bank of Old River was “useable” (the 13,300 square ft., .34 acre) and would be brought to grade. *549 McLemore inspected the property after the City had placed fill dirt on it and said he considered the City had fulfilled its obligation. McLemore testified he did this as a “favor” to Justin Querbes and did not know he was named in the donation until plaintiffs sought rezoning in 1972. Engineers or former engineers for the City testified essentially in accord with McLemore’s understanding. The project or fill-dirt work was accepted by the City in February, 1969. Andrew Querbes, Jr. testified that he was aware of the condition of the property in February, 1969, after the fill dirt was placed on it.
The lower court observed that no complaint about the grade of the property was made by any member of the Querbes family until mid-1972 when the Texaco lease prospect arose. The lower court also thought it of “great significance” that Justin Querbes, who managed the property until the family partition in September, 1969, was not called as a witness. We agree. See Culverhouse v. Travelers Ins. Co., 332 So.2d 894 (La.App.2d Cir. 1976) and Marion v. New Orleans Public Service, 306 So.2d 758 (La.App.4th Cir. 1975), writ refused, La., 310 So.2d 843. We find no error in the lower court’s conclusions that plaintiffs failed to show (1) the City breached its obligation as to the area of the property brought to grade by fill dirt, and (2) any neglect or breach of any obligation by defendant McLemore to plaintiffs so as to warrant an award of damages against him.
At appellants’ cost, judgment is
AFFIRMED.

. Southwestern Electric Power Company.

. The SWEPCO fence exists as a legal nonconforming use under the zoning laws because it was erected much longer than two years prior to the time of this litigation. Neither the City nor the plaintiffs requested SWEPCO to remove or modify this line-of-sight obstacle.