352 So.2d 638 (1977)
STATE of Louisiana
v.
John Otto COX, Jr. and Allen J. Breaux.
No. 59597.
Supreme Court of Louisiana.
November 14, 1977.
*639 Maurice J. Wilson, Jr., Callihan, Wilson & Duchein, Baton Rouge, for defendants-appellees.
William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., Ossie B. Brown, Dist. Atty., Warren J. Hebert, Marilyn C. Castle, Asst. Dist. Attys., for plaintiff-appellee.
SUMMERS, Justice.
John Otto Cox, Jr., the owner of the Club Destination, and Allen J. Breaux, his bartender employee, were charged with allowing B drinking on premises licensed as an alcoholic beverage outlet. The bill of information alleged that Cox and Breaux employed or permitted a female known as Ginger Rau to act as a B girl and solicit one William Cox to purchase drinks for her and to accept drinks from William Cox and receive a commission or remuneration therefor. Further, the bill of information alleged that the premises were licensed and the accused were the holder of the license and his employee.
The offense is proscribed by Section 88(8) of Title 26 of the Revised Statutes, which provides in pertinent part:
"No person holding a retail dealer's permit and no agent, associate, employee, representative, or servant of any such person shall do or permit any of the following acts to be done on or about the licensed premises:
. . . . .
(8) Employ or permit females, commonly known as B girls, to solicit patrons for drinks and to accept drinks from patrons and receive therefor any commission or remuneration in any other way.
. . . . .
Violation of this Section is punishable as provided in R.S. 26:191 and is also sufficient cause for the suspension or revocation of a permit. . . ."
. . . . .
The penal provision referred to is found in Section 191 and provides:
"Whoever violates any provision of this Chapter or any rule or regulation of the board, where no other penalty is provided *640 for in this Chapter, shall be fined not less than one hundred dollars nor more than five hundred dollars or imprisoned for not less than thirty days nor more than six months, or both."
Counsel representing both defendants filed a broad motion to quash the indictment, alleging that the statute upon which the prosecution was based was unconstitutional, being in contravention of the United States and Louisiana Constitutions. At the hearing defense counsel based his motion to quash upon four constitutional grounds: 1) The prosecution offends principles of collateral estoppel and double jeopardy because the club had been padlocked under an order of the Alcoholic Beverage Control Board based upon the same transaction. 2) The statute is unconstitutionally vague and overbroad. 3) The statute violates equal protection. 4) The statute offends the constitutional separation of powers doctrine in that it delegates legislative authority to prescribe criminal sanctions to the A.B.C. Board, an administrative agency of the executive department.
No evidence was presented at the hearing. After hearing arguments of counsel, the trial judge granted the motion to quash holding that the quoted statute was unconstitutional on the ground that Section 88(8) was overbroad and Section 191 contained an improper delegation of legislative authority to an administrative agency of the executive department. The State appealed.

Collateral Estoppel and Double Jeopardy
Although collateral estoppel and double jeopardy were argued before the trial judge, based upon the padlocking of the Club Destination by the A.B.C. Board for the same transaction which gave rise to this prosecution, there is no evidence to support defense counsel's assertion that such a padlocking occurred. Nor did the trial judge base his judgment upon this argument. Nevertheless, the issue will be considered because the statute on its face stipulates that a violation of its terms subject the offender to a fine or imprisonment, or both, which are criminal penalties; and a violation based upon the exact same conduct is sufficient cause for suspension or revocation of a permit, which are civil penalties.
Referring to criminal prosecutions, Article I, Section 15 of Louisiana's Constitution of 1974 declares in part that "No person shall be twice placed in jeopardy for the same offense, except on his application for a new trial, when a mistrial is declared, or when a motion in arrest of judgment is sustained." Article 591 of the Code of Criminal Procedure is to the same effect. Article 593 requires that a plea of double jeopardy be raised by a written motion, setting forth the name of the court, the proceeding in which the defendant was in jeopardy and the facts constituting double jeopardy. No such motion appears in this record.
Furthermore, a plea of double jeopardy is not available to these defendants because Article 595 highlights the fact that double jeopardy contemplates a second criminal prosecution for the same offense when it refers to the "prosecution" and the "indictment" involved in the first case.[1] Double jeopardy then "prohibits merely punishing twice, or attempting a second time to punish criminally, for the same offense." Helvering v. Mitchell, 303 U.S. 391, 399, 58 S.Ct. 630, 633, 82 L.Ed. 917 (1938) (emphasis added). See also Louisiana State Bd. of Medical Examiners v. Booth, 76 So.2d 15, 19 (La.App.1954). Therefore, assuming that defendants have been subjected to the civil penalty which the statute authorizes, they cannot plead double jeopardy in the case at bar unless they can establish that they have heretofore been prosecuted for the same offense in a criminal proceeding.
*641 Likewise, the doctrine of collateral estoppel is inapplicable to this case. It is a doctrine first announced in United States v. Oppenheimer, 242 U.S. 85, 37 S.Ct. 68, 61 L.Ed. 161 (1916), and now firmly established by Ashe v. Swenson, 397 U.S. 436, 90 S.Ct. 1189, 25 L.Ed.2d 469 (1970). The doctrine augments the traditional double jeopardy protection by incorporating into the Fifth Amendment the idea that an ultimate issue of fact which has been established in defendant's favor in a prior criminal trial cannot be relitigated by the State. Jerome Hall, Criminal Law and Procedure (3rd ed. 1976), pp. 1048-49. State v. Jackson, 332 So.2d 755 (La.1976); State v. Cain, 324 So.2d 830 (La.1975); State v. Latil, 231 La. 551, 92 So.2d 63 (1956). But for a defendant to successfully raise this issue, he must have been acquitted in a prior criminal prosecution. See One Lot Stones v. United States, 409 U.S. 232, 93 S.Ct. 489, 34 L.Ed.2d 438 (1972); Moton v. Swenson, 488 F.2d 1060 (8th Cir. 1973). Two factors militate against applying the doctrine of collateral estoppel here: defendants were not successful in the alleged suspension action, and if it did take place, it was not a criminal prosecution.

Vagueness and Overbreadth
The trial judge erred in finding the statute vague and overly broad. It is not so ambiguous that it would cause reasonable minds to guess at its meaning. Language of the statute which proscribes employing or permitting B girls "to solicit patrons for drinks and to accept drinks from patrons and receive therefor any commission or remuneration in any other way" simply means that persons employed in or owning premises operating under an alcoholic permit are prohibited from allowing B girls to solicit patrons for alcoholic or other drinks and receive remuneration for this activity. Construing a similar statute in State v. Daye, 243 La. 725, 146 So.2d 786 (1962) this Court held that the word "drink" included both alcoholic and non-alcoholic beverages. The phrase "commonly known as B girls" was not vague because it was merely descriptive according to a decision of the Fourth Circuit in Burnette v. Louisiana Board of Alcoholic Beverage Control, 252 So.2d 346 (La.App.1976). There the statute's prohibition against females soliciting and accepting drinks for remuneration was held to be clear and unambiguous.
The phrase "commonly known as B girls" has a commonly-accepted meaning, but even if it did not, the statute otherwise explains in detail the conduct which constitutes the offense. And the same is true of the phrase "commission or remuneration in any other way." The reference is to something of value given to the B girl by the operator of the establishment or by the customer. The phrase is broad enough to cover any monies coming to the female from any source as a result of her solicitation of drinks on the premises.
Overbreadth is a concept which applies only to cases where a constitutionally protected right is claimed in the prosecution. These cases have traditionally involved such rights as freedom of speech and other First Amendment rights. The act of soliciting and accepting drinks from patrons in an establishment operating under a liquor permit is not conduct protected by the federal or state constitutions.

Equal Protection
Defense counsel takes the position that the statute contravenes constitutional equal protection rights by prohibiting solicitation only by females and not males. Neither the B girl nor her male patron is being prosecuted. The defendants are "person[s] holding a retail dealer's permit . . . [or his] agent, associate, employee, representative, or servant." These statutory classifications punish men and women equally. There is no distinction on account of sex. Defendants, the owner and bartender, respectively, cannot therefore challenge the statute on equal protection grounds. The statute condemns all persons in their classification without regard to sex.

Improper Delegation of Legislative Authority
The contention that the statute improperly delegates legislative authority to define *642 crimes to the Alcoholic Beverage Control Board is based upon the words in Section 191 which provide that "Whoever violates any provision of this Chapter or any rule or regulation of the board, where no other penalty is provided for in this Chapter,. . ." shall be punished in a specific way. (emphasis added). The argument is that the inclusion of the phrase "any rule or regulation of the board" furnishes no guidelines and has the effect of allowing the board plenary authority to prescribe rules or regulations which have the force of criminal law.
Article II of the Constitution divides the power of government into three separate branches: legislative, executive and judicial. Id. § 1. No one of these branches may exercise power belonging to either of the others. Id. § 2. The power to make laws is vested in the legislature. La.Const. art. III, § 1. And the Constitution mandates the scheme for their enactment. Id. §§ 2, 15, 17, 18. The executive branch has no power to make criminal laws. La.Const. art. IV.
The defendants may not raise the issue of unconstitutional delegation of legislative authority. They were charged with a violation of Section 88(8), a legislative enactment; they were not charged with the violation of a rule or regulation of the Board. Because their rights are in nowise affected by any "rule or regulation" they have no standing to complain. State v. Brown, 288 So.2d 339 (La.1974); State v. Billiot, 254 La. 988, 229 So.2d 72 (1969).
Defendants rely upon this Court's opinion in Guidry v. Roberts, 335 So.2d 438 (La.1976), and the decision of the United States Supreme Court in Buckley v. Valeo, 424 U.S. 1, 96 S.Ct. 612, 46 L.Ed.2d 659 (1976). In both cases plaintiffs were allowed to sue. Unlike the case at bar, both were challenges to election campaign finance disclosure acts, not criminal prosecutions. Plaintiff in the Louisiana case was a major contributor to political campaigns and plaintiffs in the federal case included a candidate, a potential contributor, and others. The issue was whether plaintiffs so situated had standing to attack the composition of the supervisory committees or the designation of the reporting officials who principally receive and monitor reports from candidates, not contributors. Both courts held that plaintiffs, who were subject to criminal sanctions under the act either as contributors or as candidates, had standing to sue because they did present a real case and controversy to the court, not merely the opportunity to render an advisory opinion.
The Guidry and Buckley cases are distinguishable from the case at bar. The plaintiffs in these cases were potentially criminally liable under the act they were contesting. Defendants in the case at bar are not liable under the "rule or regulation" language of Section 191. They have no standing to maintain an attack on that portion of the statute. The activity for which they are charged is explicitly covered in the statute, a legislative enactment.
We also find that the "rules and regulations" clause is severable and its alleged infirmity does not affect other provisions of the section. It is a fundamental principle that a statute may be constitutional in one part and unconstitutional in another, and if the invalid part is severable from the rest, the portion which is constitutional may stand while that which is unconstitutional is stricken and rejected. Indeed, whenever a statute contains unobjectionable provisions severable from those found to be unconstitutional, it is the duty of the court to so declare and to maintain the act insofar as it is valid.
Act 360 of 1948 is the source provision for Section 191 of the Revised Statutes. That Act contains the following severability clause: "If any section, subsection, paragraph, sentence, clause or other part of this Act, for any reason, be declared unconstitutional, invalid, or not legally enforcible, no other part of application of this Act shall be affected thereby." Manifestly, this severability clause of the 1948 Act unmistakably expressed the legislative intent. When the pertinent provisions of the 1948 Act were incorporated into the Revised Statutes as Section 191, the revision was to "be construed *643 as continuations of and as substitutes for the laws or parts of laws which are revised and consolidated [t]herein." La.Rev.Stat. 1:16. Thus the intent of the 1948 Act expressed in the severance clause is taken into account in construing Section 191.
Any doubt on the question is emphatically laid to rest by Section 3 of Act 2 of the Extra Session of 1950, the enacting legislation for the Revised Statutes, when it declares: "If any provision of the Louisiana Revised Statutes of 1950 as enacted by Section 1 hereof is, for any reason, declared unconstitutional or invalid, the other separable provisions or parts thereof shall not be affected thereby."
Severability is principally a question of legislative intent and is expressed by the severability clause of the 1950 Act. In this case there are additional reasons for considering the "rules and regulations" language severable from the remaining portion of Section 191. It may be presumed from a reading of the comprehensive Alcoholic Beverage Control Law occupying an entire Chapter of Title 26 of the Revised Statutes that the legislature would have enacted the remainder of Section 191 without the objectionable "rules and regulations" clause because they are not dependent. Failure of the "rules and regulations" clause will not render the other penal provisions of Section 191 unenforceable. The object of the statute in this prosecution may be carried out under its constitutional provisions without reference to the "rules and regulations" provisions.
For the reasons assigned, the judgment of the trial court declaring Sections 88(8) and 191 of Title 26 unconstitutional is reversed and set aside. The case is remanded to the trial court for proceedings in accordance with law and not inconsistent with the reasons assigned herein.
DIXON, J., concurs.
SANDERS, C. J., concurs in the result.
NOTES
[1] La.Code Crim.Pro. art. 595 provides:

"A person shall not be considered as having been in jeopardy in a trial in which:
(1) The court was illegally constituted or lacked jurisdiction.
(2) The prosecution was dismissed because it was instituted in an improper venue; or
(3) The indictment was invalid."