436 So.2d 515 (1983)
Jon R. THERIOT
v.
TERREBONNE PARISH POLICE JURY.
No. 83-CA-0128.
Supreme Court of Louisiana.
June 27, 1983.
Rehearing Denied September 1, 1983.
*516 Thomas L. Wright, Houma, for plaintiff-appellee.
Jerry L. Hermann, Watkins, Walker & Prejeant, Houma, for defendant-appellant.
CALOGERO, Justice.
The constitutionality of one section of the Terrebonne Parish Police Jury Ordinance governing Charitable Raffles, Bingo and Keno is before us in this litigation.[1]
Section 8.5-4(A)(4) of Ordinance No. 2187 provides: "No facility shall be used to hold, operate and/or conduct raffles or bingo or keno games on more than two days during any calendar week."
In a previous section of the ordinance, § 8.5-1(4), "facility" is defined as "any building, structure, hall, house, apartment, church or other place where people may gather."
For the reasons which follow we determine that the ordinance is not unconstitutional, and accordingly reverse the contrary judgment of the district court.
Skateland Arena is a commercial building leased to one Dominque Cologne who in turn rents it out to charitable organizations in the Houma, Louisiana area for conducting bingo games. Skateland's owner/lessor, the plaintiff Theriot, sought and received in the district court a temporary restraining order enjoining enforcement of § 8.5-4(A)(4) of the ordinance. Theriot claimed that the section was unconstitutional because it was an unreasonable exercise of police power which deprives him of the use, enjoyment, profits and value of his property without due process of law, in contravention of the Fifth and Fourteenth Amendments to the United States Constitution and article 1, sections 2 and 4 of the Louisiana constitution.
At the hearing on the matter, the trial judge determined that § 8.5-4(A)(4) was unconstitutional under Louisiana law. The judge found that § 8.5-4(A)(4) attempted to distinguish between "small time neighborhood type charitable bingo" and "large scale, casino-like gambling" and sought to outlaw the latter by limiting the number of times charitable bingo could be held in any one facility (no more than two days during any calendar week). With such a scheme, according to the trial judge, the local government was excluding certain types of bingo games from the legislative exemption otherwise granted charitable raffles, bingo and keno in La.R.S. 83:4861.1 et seq. Relying upon this Court's decision in City of Shreveport v. Kaufman, 353 So.2d 995 (La. 1977)[2], the trial judge concluded:

*517 Section 8.5-4(A)(4) of Ordinance No. 2187, enacted for the purpose of prohibiting large scale, casino-type bingo conducted by charitable organizations, attempts to enlarge the state's definition of gambling and thereby encroaches upon the constitutional mandate that only the state shall define gambling [La. Const. art. 12 § 6]. Since the section of the ordinance impinges upon a property right of the plaintiff, to lease his property to licensed charitable organizations, it works irreparable harm upon the plaintiff. Mr. Theriot is clearly entitled to a preliminary injunction prohibiting the Terrebonne Parish Police Jury from enforcing Section 8.5-4(A)(4) of Ordinance No. 2187.
The Terrebonne Parish Police Jury has appealed the trial court's finding § 8.5-4(A)(4) unconstitutional. La. Const. art. 5 § 5(D).[3]
For the reasons which follow, we find that § 8.5-4(A)(4) is not unconstitutional. Its enactment was pursuant to and consistent with La. Const. art. 12 § 6 and La.R.S. 33:4861.1 et seq. and represents a reasonable exercise of police power by a local governing authority that is not inconsistent with the due process standards of our federal and state constitutions.
The state constitutional and statutory framework within which the Terrebonne Parish Police Jury enacted its Ordinance No. 2187 is the following.
La. Const. art. 12 § 6 provides:
Neither the state nor any of its political subdivisions shall conduct a lottery. Gambling shall be defined by and suppressed by the legislature.
While this provision expressly prohibits lotteries conducted by the state or its political subdivisions,[4] it otherwise leaves the control of gambling to the Legislature. The provision requiring the definition and suppression of gambling is not self-executing and gambling essentially is a crime only when and to the extent that the Legislature has so declared it. Gandolfo v. La. State Racing Commission, 227 La. 45, 78 So.2d 504 (1954).
Pursuant to its constitutional authority, the Legislature enacted La.R.S. 14:90(A) which defines and prohibits gambling:
R.S. 14 § 90. Gambling
A. Gambling is the intentional conducting, or directly assisting in the conducting, as a business, of any game, contest, lottery, or contrivance whereby a person risks the loss of anything of value in order to realize a profit.
Whoever commits the crime of gambling shall ...
La.R.S. 14:90.2 specifically defines and prohibits gambling in public:
R.S. 14:90.2 Gambling in Public
A. Gambling in public is the aiding or abetting or participation in any game, contest, lottery, or contrivance, in any location or place open to the view of the public or the people at large, such as streets, highways, vacant lots, neutral grounds, alleyway, sidewalk, park, beach, parking lot, or condemned structures whereby a person risks the loss of anything of value in order to realize a profit.
The Legislature has also defined some exceptions to these general prohibitions against gambling. See, e.g. La.R.S. 14:90(B) [games on board commercial cruise ships] and more pertinent here, La.R.S. 14:90.2(B) which states:
R.S. 14 § 90.2. Gambling in Public
B. This Section shall not prohibit activities authorized under the Charitable Raffles, Bingo and Keno Licensing Law, nor shall it apply to bona fide fairs and festivals conducted for charitable purposes.
The Legislature's role in "defining" and "suppressing" gambling has been prescribed by 1974 La. Const. art. 12 § 6 and predecessor *518 constitutional provisions. La. Const. art. 19 § 8 (1921); La. Const. arts. 178, 188, 189 (1913); La. Const. arts. 178, 188, 189 (1898); La. Const. arts. 167, 172 (1870); La. Const. art. 116 (1864); La. Const. art. 113 (1852); La.Const. art. 116 (1845). City of Lake Charles v. Marcantel, 125 La. 170, 51 So. 106 (1910); Town of Ruston v. Perkins, 114 La. 851, 38 So. 583 (1905).
The power to suppress and/or to define gambling has often been granted by the Legislature to local governing authorities. See, La.R.S. 33:4851 (Municipalities over 5000 but less than 100,000 inhabitants may pass ordinances prohibiting gambling); La. R.S. 33:4851.1 (Municipalities with less than 100,000 inhabitants may pass laws prohibiting, defining, and providing penalties for gambling.)[5] La.R.S. 33:4852 (Police juries may suppress gambling with cards, excepting private games); La.R.S. 33:4853 (Police juries may enforce La.R.S. 33:4852 with specified penalties); La.R.S. 33:4854 (Municipalities of less than 5000 inhabitants may regulate pool rooms and turf exchanges and provide penalties for violations). See also, La.R.S. 4:141 et seq.: "Horse Racing," which this Court found to be constitutional in Gandolfo v. Louisiana State Racing Commission 227 La. 45, 78 So.2d 504 (1955).
La.R.S. 33:4861.1 et seq., "Charitable Raffles, Bingo and Keno Licensing Law" was passed by the Legislature in 1968.[6] Under La.R.S. 33:4861.3, "[t]he governing authority of each parish shall decide whether charitable raffles, bingo and keno as provided for in this Part shall be permitted within the parish."
Pursuant to that authority and after following the requisite procedures for notice, publication and public hearing, the Terrebone Parish Police Jury enacted Ordinance No. 2187.
Ordinance No. 2187 for the most part tracks the language and licensing procedures of La.R.S. 33:4861.1 et seq. The licensing procedures generally are not at issue here. What was offensive to the plaintiff, and to the trial judge considering the constitutionality of the ordinance, was that portion of the ordinance which restricted each facility's hosting bingo and keno games on only two days during any one calendar week. That provision makes illegal the bingo games held on an average of five days a week at Skateland Arena.
The only provision of the bingo licensing statute which addresses the frequency of charitable games authorized as exceptions to the general prohibition against gambling as a business, is La.R.S. 33:4861.11 which provides that charitable games of chance may not be held under any local license "oftener than on six days in any calendar month." Skateland's bingo tenants are charitable organizations, no one of which conducts more than six games per month.
Because La.R.S. 33:4861.1 et seq. does not itself limit the number of times charitable bingo may be held in a given week in a given facility, the respondent argues that the imposition of such a limit by local ordinance exceeds the grant of authority to the police jury given by the Legislature. That argument, however, runs contrary to the express legislative delegation of authority to local governing bodies contained within the Charitable Raffles, Bingo and Keno Licensing Law.
La.R.S. 33:4861.10 places the responsibility for the control and supervision of raffles, bingo or keno games and for the promulgation of rules and regulations governing *519 the holding, operating and conducting of such games squarely on the municipality or the governing body of any parish issuing licenses to charitable organizations.[7] This, coupled with La.R.S. 33:4861.3[8] which places the outset decision of whether to permit or prohibit charitable raffles, bingo or keno within the parish on the local governing authority, convinces us that the more restrictive local ordinance is in keeping with, rather than contrary to, the legislative authorization. Furthermore, the scheme set out by the Legislature by which local governing authorities are to determine whether and how restrictively to authorize charitable bingo is in keeping with the Legislature's constitutional mandate (La. Const. art. 12 § 6) to define and to suppress gambling.
As stated earlier, however, the focal point of respondent's argument in the court below was that § 8.5-4(A)(4) of Ordinance No. 2187 was an unreasonable exercise of police power which resulted in his being deprived of the use, enjoyment, profits and value of his property without due process of law. Fifth and Fourteenth Amendments; La. Const. art. 1 §§ 2 and 4. For the reasons which follow, we conclude to the contrary and find that § 8.5-4(A)(4) was enacted pursuant to an appropriate exercise of police power by the Terrebonne Parish Police Jury.
Section 8.5-4(A)(4) is neutral on its face. ["No facility shall be used to hold, operate and/or conduct raffles or bingo or keno games on more than two days during any calendar week"; "Facility" is defined within the ordinance at § 8.5-1(4) as "any building, structure, hall, house, apartment, church or other place where people may gather."] The ordinance restricts not just Skateland Arena, nor just those facilities hosting "large scale, casino-like gambling" (in the words of the trial judge). The ordinance prohibits charitable raffles, bingo or keno games of any size or description in any "building, structure, hall, house, apartment, church or other place where people may gather" on more than two days in any given week.
There is no contention that the ordinance will be applied in less than an equal manner. Nor is there a fundamental right or suspect classification involved here.
The contention basically is that Theriot's property rights have been abridged without due process of law by § 8.5-4(A)(4) which limits the renting of his building for charitable bingo games to two days a week.
The federal and state constitutions provide that no person shall be deprived of property without due process of law. U.S. Const. Fifth and Fourteenth Amendments; La. Const. art. 1 § 2. Balanced against this substantive due process right, however, is the police power of governing authorities to *520 protect the health, safety, morals and general welfare of the people: "the inherent need of governments to protect the safety and welfare of their citizens from the unrestrained liberty of some individuals." Nowak, Constitutional Law 389 (1978), citing Corwin, Liberty Against Government 72 (1948):
La. Const. art. 1 § 4 states:
Every person has the right to acquire, own, control, use, enjoy, protect, and dispose of private property. This right is subject to reasonable statutory restrictions and the reasonable exercise of the police power.
Professor Hargrave, in "The Declaration of Rights of the Louisiana Constitution of 1974," 35 La.L.Rev. 1 at 12 (1974) notes: "The background of [this] provision indicates an understanding that the statutory limitations and police power regulations are to be given a broad ambit." See, e.g. Brown v. State, through Dept. of Public Safety, Division of Louisiana State Police, 392 So.2d 415 (La.1980), cert. denied, 452 U.S. 940, 101 S.Ct. 3085, 69 L.Ed.2d 955, wherein La.R.S. 15:31 which allowed police to destroy slot machines summarily, was found to accord with the mandate of La. Const. art. 12 § 6 to suppress gambling, and did not violate the due process and right to private property principles contained in La. Const. art. 1 § 2.
In Board of Barber Examiners of Louisiana v. Parker, 190 La. 214, 182 So. 485 at 490-91 (1938),[9] this Court quoted approvingly Nebbia v. New York, 291 U.S. 502, 54 S.Ct. 505, 78 L.Ed. 940 (1934) as support for the principle that private rights must yield to the public good.
Under our form of government the use of property and the making of contracts are normally matters of private and not of public concern. The general rule is that both shall be free of governmental interference. But neither property rights nor contract rights are absolute; for government cannot exist if the citizen may at will use his property to the detriment of his fellows, or exercise his freedom of contract to work them harm. Equally fundamental with the private right is that of the public to regulate it in the common interest. 291 U.S. at 510, 54 S.Ct. at 506.
Later in the Board of Barber Examiners opinion, we specifically considered the question of the extent of the state's police power in matters of public welfare.
Police power is inherent in the state. Under that power the state may enact laws to protect and preserve social order, to restrict and punish crime, to preserve the public peace, to safeguard and protect the health and morals of the people, even though the effect of such laws is to strike down private contracts, to deprive the citizen of his liberty to contract and to take from him or destroy his property. But the legislature is prohibited from enacting such laws except on proper occasions and for adequate reasons. If the reasons are not adequate, such legislation violates the due process clauses of the Constitutions. (Emphasis in original). 182 So.2d at 491.
The substantive guarantee of due process in the federal and state constitutions requires only that the legislation have a rational relationship to a legitimate state interest. City of New Orleans, v. Dukes, 427 U.S. 297, 96 S.Ct. 2513, 49 L.Ed.2d 511 (1976); Williamson v. Lee Optical, 348 U.S. 483, 75 S.Ct. 461, 99 L.Ed. 563 (1955); Harry's Hardware, Inc. v. Parsons, 410 So.2d 735 (La.1982).
An ordinance, like a state statute, is presumed to be constitutional and the party attacking the ordinance has the burden of proving its unconstitutionality. An ordinance will be upheld if there exists a reasonable relationship between the law and the public good. Gilbert v. Catahoula Parish Police Jury, 407 So.2d 1228 (La.1981); City of Shreveport v. Curry, 357 So.2d 1078 *521 (La.1978); Everhardt v. City of New Orleans, 253 La. 285, 217 So.2d 400 (1968); Hi-Lo Oil Company v. City of Crowley, 274 So.2d 757 (La.App. 3d Cir.), writ refused, 277 So.2d 673 (La.1973).
As discussed more fully earlier in this opinion, the suppression, or regulation, of gambling is a legitimate state interest. La. Const. art. 12 § 6; La.R.S. 14:90; La. R.S. 14:90.2. Defining and prescribing means of suppression are left to the state legislature and the legislative determination in this regard constitutes an appropriate exercise of police power for protection of the public. Brown v. State, etc., supra; Vaughan v. Dowling, 243 La. 390, 144 So.2d 371 (1962). The Legislature in excepting charitable raffles, bingos and kenos from the general prohibition has delegated the decision to permit or prohibit such games to the respective municipalities or governing authorities. La.R.S. 33:4861.3.
The governing authority of Terrebonne Parish has the right under its legislative grant of authority to prohibit the holding of charitable games of chance, or to prescribe such restrictions or limitations in this regard as they see fit. La.R.S. 33:4861.10. Therefore if the means chosen by the Terrebonne Parish Police Jury to control and supervise the holding, operating and conducting of charitable raffles, bingo and keno games within their parish is not arbitrary or capricious, but is rational and reasonable, it conforms with constitutional standards of substantive due process.
The transcript of testimony at the hearing for the preliminary injunction confirms the reasonableness and rationality of the means chosen under these circumstances.
On the one hand, the police jurors recognized the good that may be accomplished by use of the proceeds of bingo games conducted by charitable organizations, as was attested to at the public hearing held on the ordinance (reportedly one of the best ever attended in the history of the parish). On the other hand, a majority of the police jurors were equally aware of the potential for a natural escalation of gambling within the parish were the bingo games to remain unrestricted, a concern also expressed by constituents. There was a specific need for better reporting, for better controls over charitable raffles, bingo and keno games, and over those with responsibility for their operation. The ordinance was to provide rules and regulations which would apply equally to all charitable organizations within the parish.
Several alternatives were considered and rejected. Outlawing bingo games completely was rejected because of the harm such might bring to the local organizations which depended on the proceeds for their various charitable projects. Limiting the size of the "pots" was considered and rejected. Likewise, dividing the parish into zones along police jury election district lines and allowing charitable organizations to hold games only within their respective home districts was considered. This alternative was rejected, for the most part because there were no charitable organizations in Skateland's district. If so enacted, the ordinance would have been particularly oppressive to those charitable organizations using the Skateland facility. No games at all could have been held at Skateland were such a zone plan to have been enacted. The police jury chose limiting two bingo days per week in any given facility as the solution which best struck a balance between prohibition on the one hand and unrestricted charitable games on the other.
Therefore the section whereby charitable raffles, bingo or keno games are limited in any one facility in the parish to only two days in any given week is rationally related to the control and supervision of such games within the parish and does not offend the constitutional guarantees of substantive due process.
For the foregoing reasons we find that § 8.5-4(A)(4) of Ordinance No. 2187 does not in any respect violate, or exceed the authority given the police jury, by La.R.S. 33:4861.1 et seq.; that § 8.5-4(A)(4) is by virtue of the legislative scheme in keeping with Louisiana constitutional provisions relative to gambling; that § 8.5-4(A)(4) does *522 not violate state and federal due process guarantees; and that § 8.5-4(A)(4) is thus constitutional.

Decree
The judgment of the trial court that § 8.5-4(A)(4) of Terrebonne Parish Ordinance No. 2187 is unconstitutional is reversed; the preliminary injunction granted in favor of plaintiff in the district court is recalled.
REVERSED; PRELIMINARY INJUNCTION RECALLED.
NOTES
[1] Including a provision restricting the use of a given facility to conduct bingo and keno games, the ordinance was passed on December 8, 1982, under authority of R.S. 33:4861.1 et seq., the "Charitable Raffles, Bingo and Keno Licensing Law."
[2] In City of Shreveport v. Kaufman, 353 So.2d 995 (La.1977), this Court found that local authorities could not classify as gambling those activities which the state legislature had not classified as gambling. The state law, La.R.S. 14:90, prohibits gambling "conduct[ed], as a business." The Shreveport ordinance went beyond that definition and prohibited non-business gambling as well.
[3] La. Const. art. 5 § 5(D) provides for the direct appeal to this Court if an ordinance has been declared unconstitutional.
[4] For a review and discussion of the history of lotteries in Louisiana up to and through the 1973 Constitutional Convention, see Hargrave, 43 La.L.Rev. 647 at 677 et seq.
[5] La.R.S. 33:4851.1 giving the power to define gambling to municipalities with population of less than 100,000 was enacted in July, 1952, on the heels of a January, 1952 decision of this Court. City of Alexandria v. Lacombe, 220 La. 618, 57 So.2d 206 (1952) held that the legislature had taken away the power to define gambling from cities with a population of less than 100,000 by enacting La.R.S. 33:4851 without express mention of the power to define gambling and by passing La.R.S. 14:90 which contained a statewide definition of gambling.
[6] The "Charitable Raffles, Bingo and Keno Licensing Law" was enacted by Acts 1968, No. 609 § 1, as Subdivision 1-A of Subpart B of Part V of Chapter 1 of Title 14, containing R.S. 14:90.1 to 14:90.16. On authority of R.S. 24:253, the provisions were transferred and redesignated R.S. 33:4861.1 to 33:4861.16.
[7] La.R.S. 33:4861.10 reads in full:

§ 4861.10 Control and supervision over games
The municipality or governing body of any parish issuing any license under this Part shall have and exercise control and supervision over all games of chance held, operated or conducted under such license, to the end that the same are fairly held, operated and conducted in accordance with the provisions of such license, the rules and regulations promulgated by the municipality or governing body of any parish and the provisions of this Part governing the holding, operating and conduct of the same, and such municipality or governing body of the parish shall have power and authority to suspend any license issued by such governing body and to revoke the same, after hearing, for any violation of any such provision, and shall by its officers and agents have the right of entry at all times into any premises where any such game of chance is being held, operated and conducted or where it is intended that any such game of chance shall be held, operated and conducted, or where any equipment being used or intended to be used in the conduct thereof is found, for the purpose of inspecting the same.
[8] La.R.S. 33:4861.3 reads in full:

§ 4861.3. Decision whether to permit raffles, bingo and keno.
The governing authority of each such municipality shall decide whether charitable raffles, bingo and keno as provided for in this Part shall be permitted within the limits of the municipality.
The governing authority of each parish shall decide whether charitable raffles, bingo and keno as provided for in this Part shall be permitted within the parish.
[9] In Board of Barber Examiners, 190 La. 214, 182 So. 485 (1938), a state statute regulating barbers in their work was challenged under the due process clauses of both federal and state constitutions and upheld as a valid exercise of police power.