495 So.2d 1306 (1986)
STATE of Louisiana
v.
Lee D. GRIFFIN.
No. 86 KA 0944.
Supreme Court of Louisiana.
October 20, 1986.
*1307 William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., Charles F. Wagner, Dist. Atty., Roger Breedlove, Asst. Dist. Atty., for plaintiff-appellant.
John R. Hunter, Jr., for defendant-appellee.
COLE, Justice.
This is a criminal prosecution against defendant, Lee D. Griffin, who was charged by bill of information with resisting arrest, in violation of La.R.S. 14:108(A), and gambling in public, in violation of La. R.S. 14:90.2. Defendant Griffin filed a motion to quash the "gambling in public" count of the bill of information, which was granted by the trial court. The primary issue presented in this application is whether or not the trial court erred in granting defendant's motion to quash on the ground La.R.S. 14:90.2 is unconstitutionally overbroad on its face. The secondary issue is whether or not the bill of information, as drafted, sufficiently informs the accused of the charge against him. Because we find the statutory language neither unconstitutionally vague nor overbroad, and because any alleged deficiencies in the bill of information are easily remedied by the filing of a bill of particulars, we reverse.
On March 11, 1986, defendant Griffin was charged in a bill of information "IN THAT HE DID ON OR ABOUT THE 20th DAY OF FEBRUARY, 1986, intentionally gamble in public in open view of the public in a public parking lot, in a game contest, etc. whereby he risks the loss of anything of value in order to realize a profit, in violation of R.S. 14:90.1 [sic]." The text of the information charged defendant with a violation of La.R.S. 14:90.1, however, it is evident from earlier language in the information, and from the record as a whole, defendant was charged with violation of La.R.S. 14:90.2.
Defendant's motion to quash the "gambling in public" count of the bill of information was based upon two grounds. First, he urges the information did not sufficiently inform him of the nature and cause of the accusation against him. Secondly, he asserts the statute does not define the offense or specify the manner in which it can be committed. In the understanding of the trial judge, this second ground was broad enough to include an attack on the facial constitutionality of the statute. At the hearing on the motion to quash, defense arguments focused mainly on the alleged defects in the information itself. However, the trial judge was more interested in the potential reach of the statute. Without expressly ruling on the bill of information the trial judge granted the motion to quash, finding La.R.S. 14:90.2 unconstitutionally overbroad.
The State of Louisiana appealed the ruling to this Court, arguing the statute as written is clearly constitutional. The State contends it should be its burden at trial to prove whether or not the acts committed by the defendant come within the purview of the statute. The defendant did not address the trial court's ruling on the constitutionality of La.R.S. 14:90.2, continuing instead with his argument the bill of information failed to properly inform him of the charge. We address both the issue of constitutionality and the issue of the alleged failure to *1308 give adequate notice. Neither the State nor defense provided any information on the circumstances surrounding defendant Griffin's arrest, other than to state in the bill of information he "intentionally gamble[d] in open view of the public in a public parking lot." We therefore consider the trial court's ruling on the constitutionality of La.R.S. 14:90.2 only on the face of the statute, and not as the statute was applied to this particular defendant.
La.R.S. 14:90.2, defining and proscribing gambling in public, provides as follows:
A. Gambling in public is the aiding or abetting or participation in any game, contest, lottery, or contrivance, in any location or place open to the view of the public or the people at large, such as streets, highways, vacant lots, neutral grounds, alleyway, sidewalk, park, beach, parking lot, or condemned structures whereby a person risks the loss of anything of value in order to realize a profit.
B. This Section shall not prohibit activities authorized under the Charitable Raffles, Bingo and Keno Licensing Law, nor shall it apply to bona fide fairs and festivals conducted for charitable purposes.
C. Whoever commits the crime of gambling in public shall be fined not more than five hundred dollars, or imprisoned for not more than six months, or both.
Constitutional scrutiny favors the statute. Statutes are presumed to be valid, and the constitutionality of a statute should be upheld whenever possible. State v. Brenner, 486 So.2d 101 (La.1986); State v. Rones, 223 La. 839, 67 So.2d 99 (1953). Because a state statute is presumed constitutional, the party challenging the statute bears the burden of proving its unconstitutionality. The attack will fail if there exists a reasonable relationship between the law and the promotion or protection of a public good, such as health, safety or welfare. Theriot v. Terrebonne Parish Police Jury, 436 So.2d 515 (La.1983); Gilbert v. Catahoula Parish Police Jury, 407 So.2d 1228 (La.1981). The legislation must have a rational relationship to a legitimate state interest in order to satisfy the substantive guarantee of due process in the federal and state constitutions. Theriot, supra, at 520; City of New Orleans v. Dukes, 427 U.S. 297, 96 S.Ct. 2513, 49 L.Ed.2d 511 (1976); Harry's Hardware, Inc. v. Parsons, 410 So.2d 735 (La.1982), cert. denied 459 U.S. 881, 103 S.Ct. 178, 74 L.Ed.2d 145 (1982).
This Court has previously held the suppression or regulation of gambling is a legitimate state interest. Theriot, supra, at 521. Moreover, this interest is of such import it is embodied in the Louisiana Constitution. La.Const.Art. 12, § 6. The defining and prescribing the means of suppression are the responsibility of the state legislature, and determinations of the legislature in this regard constitute an appropriate exercise of police power for protection of the public. Brown v. State, through Department of Public Safety, Division of Louisiana State Police, 392 So.2d 415 (La. 1980), cert denied, 452 U.S. 940, 101 S.Ct. 3085, 69 L.Ed.2d 955 (1981); Vaughan v. Dowling, 243 La. 390, 144 So.2d 371 (1962).
Attacks on the constitutionality of a statute may be made by two methods. The statute itself can be challenged, or the statute's application to a particular defendant can be the basis of the attack. Possible constitutional challenges may be based on either "vagueness" or "overbreadth" grounds. In this case the trial judge ruled La.R.S. 14:90.2 unconstitutional on overbreadth grounds, but we also consider vagueness in this decision.
A statute would be void for vagueness when it does not give "a person of ordinary intelligence ... fair notice of what conduct is forbidden...." State v. Defrances, 351 So.2d 133, 135 (La.1977). The requirement of lack of vagueness or definiteness is derived from the due process clauses of the United States and Louisiana Constitutions, and from Article I, § 13 and 16 of the 1974 Louisiana Constitution. Under these provisions, a criminal statute must meet two requirements in order to pass constitutional muster. First, it must give adequate notice to individuals of the conduct which is proscribed and punishable *1309 by law. Second, adequate standards must be provided for those charged with determining the guilt or innocence of the accused. State v. David, 468 So.2d 1126 (La.1984), supplemented 468 So.2d 1133 (La.1985), cert. denied ___ U.S. ___, 106 S.Ct. 1998, 90 L.Ed.2d 678 (1986); State v. Union Tank Car Co., 439 So.2d 377 (La. 1983); State v. Dousay, 378 So.2d 414 (La. 1979).
Though the constitutionality of La.R.S. 14:90, which prohibits "Gambling," has been upheld in State v. Varnado, 208 La. 319, 23 So.2d 106 (1944), this Court has not previously considered the constitutionality of La.R.S. 14:90.2 and its prohibition against "gambling in public." There are two apparent distinctions between this statute and La.R.S. 14:90. La.R.S. 14:90 prohibits in pertinent part the "intentional conducting... as a business, of any game, contest, lottery, or contrivance whereby a person risks the loss of anything of value in order to realize a profit...." The applicability of La.R.S. 14:90.2 is limited to gambling in places "open to the view of the public or the people at large ..." but is not restricted, as is La.R.S. 14:90, to gambling conducted "as a business...."
Varnado, supra, found the statutory definition of gambling, which was the same in 1944 as it is today, not vague or indefinite due to the innumerable ways in which gambling can be conducted and the countless games, contests or contrivances with which it can be accomplished. It therefore seems clear the similar language contained in La.R.S. 14:90.2 defining gambling as any "game, contest, lottery, or contrivance ..." would also pass constitutional muster.
Nor should the "public" terminology of La.R.S. 14:90.2 cause the statute to be infirm. The term "public" is of such generally accepted meaning as to give adequate notice of the concept being described and intended by the legislature. Also, this Court has in the past interpreted the meaning of "public" within the context of other statutes in the criminal code. In State v. Muller, 365 So.2d 464 (La.1978), we determined while examining our obscenity statute an enclosed supermarket is not "a location or place open to the view of the public or the people at large such as a street, highway, neutral ground, sidewalk, park, beach, river bank or other place or location viewable therefrom...." La.R.S. 14:106. Cf. State v. Christine, 239 La. 259, 118 So.2d 403 (1960), rev'd. on rehearing on other grounds. Further evidence of all places not fitting within the intendment of "public" is seen in State v. Young, 457 So.2d 205 (La.App. 2d Cir.1984), when defendants who were "shooting dice" in a laundromat were not "gambling in public" under La.R.S. 14:90.2, even though they were visible from the street.
According to the Reporter's Comment to La.R.S. 14:90, the words "anything of value" are used to include every possibility of loss. This meaning should apply by analogy to the identical language contained in La.R.S. 14:90.2. This is further supported by La.R.S. 14:2(2), under which "anything of value" is to be given "the broadest possible construction...." For both La.R.S. 14:90 and 14:90.2 "profit" means a valuable return or gain. See, Webster's New Collegiate Dictionary, G & C Merriman Co., Springfield, Mass., Copyright 1977. It therefore appears the language of La.R.S. 14:90.2 is sufficiently clear and would provide the "person of ordinary intelligence" notice of whether or not his contemplated conduct is prohibited; and would provide a meaningful standard for the factfinder to apply in determining the guilt or innocence of the accused. State v. David, supra.
As for the trial judge's ruling on overbreadth grounds, this cannot be maintained in light of existing jurisprudence. Individuals are protected from incursions by the state into certain areas of their lives by the Fourteenth Amendment of the United States Constitution, and a statute would be overbroad and, thus, constitutionally defective, if it extends state criminal authority beyond the proper reach of government into one of these protected areas. State v. Tucker, 354 So.2d 1327 (La.1978); Scott v. District Attorney, Jefferson Parish, State of La., 309 F.Supp. *1310 833 (E.D.La.1970), affirmed, 437 F.2d 500 (5th Cir.1971). In order for the principle of overbreadth to apply, a constitutionally protected right must be claimed in the prosecution. State v. Tucker, supra; State v. Cox, 352 So.2d 638 (La.1977). Because La. R.S. 14:90.2 attempts to regulate conduct, the recent case of Bowers v. Hardwick, ___ U.S. ___, 106 S.Ct. 2841, 92 L.Ed.2d 140 (1986) appears relevant.
Hardwick, supra, concerned the reach of Georgia's sodomy law insofar as it criminalized consensual sodomy. The only claim before the Court was Hardwick's challenge to the statute as applied to consensual homosexual sodomy, and the issue was whether or not the United States Constitution provides a fundamental right to homosexuals to engage in sodomy. The Court noted it has in proper cases sought to identify those rights which qualify for heightened judicial protection, even though not actually identifiable in the Constitution's text. It continued with the following:
In Palko v. Connecticut, 302 U.S. 319, 325, 326, 58 S.Ct. 149, 151, 152, 82 L.Ed. 288 (1937), it was said that this category includes those fundamental liberties that are "implicit in the concept of ordered liberty," such that "neither liberty nor justice would exist if [they] were sacrificed." A different description of fundamental liberties appeared in Moore v. East Cleveland, 431 U.S. 494, 503, 97 S.Ct. 1932, 1937, 52 L.Ed.2d 531 (1977) (opinion of POWELL, J.), where they are characterized as those liberties that are "deeply rooted in this Nation's history and tradition." Id., at 503, 97 S.Ct. at 1938 (POWELL, J.). See also Griswold v. Connecticut, 381 U.S., at 506, 85 S.Ct., at 1693.

Hardwick, supra, at 2844.
A majority of the Court concluded "to claim that a right to engage in such conduct is `deeply rooted in this Nation's history and tradition' or `implicit in the concept of ordered liberty' is, at best, facetious." Id, 106 S.Ct. at 2846. Under Hardwick it seems clear if the state can reach into the privacy of the home and regulate the consensual sexual acts of adults, it may also regulate public gambling with a broad enough stroke to reach some of those activities mentioned by the trial judge, such as playing marbles for keeps in the school yard and Sunday games of golf. While wagering on games and contests may have ancient roots, attempts to prohibit and suppress it are just as old. It can hardly be said gambling is conduct "deeply rooted in this Nation's history and traditions" or "implicit in the concept of ordered liberty." In addition, La.R.S. 14:90.2 purports to regulate "public" gambling, and so involves none of the concern expressed in Justice Blackmun's dissent as regards the constitutional right to privacy.
Finally, to suggest in this context that Louisiana's constitution may provide greater due process rights than the federal constitution appears completely erroneous in light of the Louisiana Constitution's explicit directive to the legislature to define and suppress gambling. La. Const. Art. 12, § 6.
Though the State and defense have provided almost no facts in this case, and the matter is still before trial, it appears from the bill of information defendant Griffin is more similar to the player of marbles in the school yard, than the Sunday golfer. Because more social ills result from street games than from the pastoral setting of a golf game, the legislature may have had only the former in mind when it enacted La.R.S. 14:90.2, and the police may enforce it with that understanding. Nevertheless, as established above, nothing prevented the legislature from concluding public gambling of any type constitutes enough of a social ill to warrant suppressing it as a general matter. Moreover, the possibility Georgia might enforce its sodomy laws only against homosexuals, though the statutory language is broad enough to also cover heterosexuals, hardly deterred the majority of the Court in Hardwick from rejecting the defendant's overbreadth challenge.
Defendant Griffin also attacked the sufficiency of the bill of information, relying almost exclusively on State v. Varnado, supra, and State v. Straughan, 229 *1311 La. 1036, 87 So.2d 523 (1956). These early cases were authority for the proposition a defendant should not be required to look beyond the four corners of a bill of information to identify the transaction to which the indictment relates, and also for the rule deficiencies in the bill of information could not be cured with a detailed bill of particulars. Defendant's authority, however, is not persuasive, as by relying on Straughan, supra, he relies on a now discarded constitutional interpretation. Straughan interpreted La. Const. Art. 1, § 10 (1921), which provided the accused must be informed of the nature and cause of the accusation against him in all criminal prosecutions. The Court was unduly stringent in holding that in order to protect the constitutional right to be informed of the nature and cause of the accusation, an indictment must contain the essential facts of the charge, and the failure of the indictment to do so could not be remedied by the inclusion of those facts in a bill of particulars. The ruling of Straughan, however, has been eroded by subsequent jurisprudence of this Court. It was overruled in part by State v. Russell, 292 So.2d 681 (La.1974), and disposed of entirely in State v. Gainey, 376 So.2d 1240 (La.1979). Gainey, supra, reiterated that the constitutional requirement of informing the defendant of the nature and cause of the charge against him is not to be read so restrictively as to mean he must be so informed by indictment. State v. Pichler, 355 So.2d 1302 (La.1978); State v. Ford, 349 So.2d 300 (La.1977); State v. Randolph, 334 So.2d 687 (La.1976). The Court stated the more reasonable rule is when the bill of information charging the defendant fails to set forth the detailed facts constituting the offense charged, his proper remedy is not a motion to quash, but a request for a bill of particulars. The principle that an indictment cannot be fleshed out by a bill of particulars is no longer valid, and defendant Griffin's bill of information should not have been quashed for reasons of lack of specificity.
The trial court's order to quash the bill of information is reversed. The statutory language in La.R.S. 14:90.2 is neither unconstitutionally vague nor overbroad. Moreover, any alleged deficiencies in the bill of information are easily cured by filing a bill of particulars.
For the above reasons, we reverse the trial court's granting of the motion to quash, and remand the case for further proceedings.
REVERSED AND REMANDED.
CALOGERO, J., concurs and assigns reasons.
LEMMON, J., concurs.
CALOGERO, Justice, concurring.
There is not reason for us to rely in this case on Bowers v. Hardwick, ___ U.S. ___, 106 S.Ct. 2841, 92 L.Ed.2d 140 (1986) the recent United States Supreme Court decision involving Georgia's statute which criminalized consensual sodomy. Our cases, State v. Tucker, 354 So.2d 1327 (La. 1978) and State v. Cox, 352 So.2d 638 (La. 1977) adequately support the legal point that in order for the principle of overbreadth to apply, a constitutionally protected right must be claimed in the prosecution.