721 So.2d 506 (1998)
STATE of Louisiana
v.
Joseph NORFLEET.
No. 96-KA-2122.
Court of Appeal of Louisiana, Fourth Circuit.
October 21, 1998.
*507 Harry F. Connick, District Attorney, Suzanne S. Dickey, Assistant District Attorney, New Orleans, for Appellee.
*508 Pamela S. Moran, Louisiana Appellate Project, New Orleans, for Appellant.
Court composed of Chief Judge PATRICK M. SCHOTT, Judge WILLIAM H. BYRNES, III and Judge PATRICIA RIVET MURRAY.
BYRNES, J.
The defendant, Joseph Norfleet, pursuant to a jury trial was found guilty as charged with the first degree murder of James Darby, a violation of La. R.S. 14:30.
The victim, James Darby, while walking home from a picnic with a group of friends and relatives was shot in the head and killed by the defendant. James Darby was nine years old at the time. Darby was shot in retaliation for injuries sustained by the defendant's sister in a brawl that occurred at the picnic. The defendant became angry when he saw that his sister had been hit in the face when she came home from the park. Incensed, he got a gun (he said he did so at the suggestion of his friend, James Walker) and drove off in a car with his brother who had witnessed the brawl and could identify the party responsible. James Walker drove the vehicle, and another friend of the defendant, Gerald Grissum, was also present in the vehicle. The young victim had nothing to do with the injuries sustained by the victim's sister. Instead, young Darby had the misfortune of walking with a group of people beside the man the defendant believed was responsible for his sister's injuries and was the victim of the defendant's inaccurate aim. The defendant acknowledged that he fired the shot, but stated that he was shooting, not at the deceased victim, but at the man he held responsible for hitting his sister.

I. ERRORS PATENT
There appears to be one patent error upon review of the appeal record. The docket entry and minute entry of March 21, 1996, indicates that the trial court sentenced the defendant immediately after denying defendant's motion for arrest of judgment. The entries do not indicate that the defendant waived his right to a twenty-four hour delay between the denial of his motion and sentencing. See La.C.Cr.P. art. 873. In State v. Augustine, 555 So.2d 1331 (La.1990), the Louisiana Supreme Court held that failure to waive the twenty-four hour delay did not constitute harmless error, even if the defendant did not raise that issue as error on appeal, where the defendant challenged his sentence on appeal. However, in State v. Collins, 584 So.2d 356 (La.App. 4 Cir.1991), this Court held that the failure to observe the delay would be deemed harmless error where the defendant did not challenge his sentence on appeal and did not raise as error the failure of the trial court to comply with the twenty-four hour delay requirement. In the present case, the defendant's sentence of life imprisonment was mandatory, defendant does not complain of his sentence on appeal, and the defendant failed to raise as error the issue of the twenty-four hour delay. Accordingly, this error is harmless. No other errors patent were found.

II. ASSIGNMENT OF ERROR NO. 1
The defendant argues that the State was unable to produce sufficient evidence to prove beyond a reasonable doubt that he had the specific intent to kill or to inflict great bodily harm upon the victim.
When assessing the sufficiency of evidence to support a conviction, the appellate court must determine whether, viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found proof beyond a reasonable doubt of each of the essential elements of the crime charged. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); State v. Jacobs, 504 So.2d 817 (La.1987).
The elements must be proved such that every reasonable hypothesis of innocence is excluded. La. R.S. 15:438. La. R.S. 15:438 is not a separate test from Jackson v. Virginia, supra, but rather is an evidentiary guideline to facilitate appellate review of whether a rational juror could have found a defendant guilty beyond a reasonable doubt. State v. Wright, 445 So.2d 1198 (La.1984). All evidence, direct and circumstantial, must meet the Jackson reasonable doubt standard. State v. Jacobs, supra.
*509 La. R.S. 14:30 defines first degree murder, in pertinent part, as "the killing of a human being ... [w]hen the offender has the specific intent to kill or to inflict great bodily harm and is engaged in the perpetration or attempted perpetration of ... drive-by shooting." The defendant contends the State was unable to produce sufficient evidence to prove he had the intent to kill or to inflict great bodily harm. Specific intent exists when the circumstances indicate that the offender actively desired the prescribed criminal consequences to follow his act or failure to act. La. R.S. 14:10(1). It may be proven by direct evidence or inferred from the circumstances or the defendant's actions. Id. Intent to kill has been found where the defendant shot a gun at the victim. State v. Davis, 93-0663 (La.App. 4 Cir. 2/25/94), 633 So.2d 822, writ denied, 94-2077 (La.9/20/96), 679 So.2d 422. Further, evidence showing that a defendant fired a weapon, aimed in the direction of a crowd of innocent bystanders, is sufficient to prove the defendant had the specific intent to kill or to inflict great bodily harm. State v. Allen, 94-1941 (La.App. 1 Cir. 11/9/95), 664 So.2d 1264, writ denied, 95-2946 (La.3/15/96), 669 So.2d 433.
The defendant acknowledged that he fired the shot. His testimony is corroborated by Michael Norfleet and Gerald Grissum. Michael Norfleet is the defendant's brother. He was in the car with the defendant. He testified that it was he who pointed out to the defendant the man near James Darby allegedly responsible for inflicting the injuries on the defendant's sister. Grissum was also in the vehicle at the time of the shooting. He later reported the incident to the police.
However, defendant argues he did not have the specific intent to kill or inflict great bodily harm on the victim, James Darby. He testified that he asked his brother Michael to point out the person who hit Karen in the eye. Michael identified Herman Payne as the person in question. The defendant then fired the weapon aiming at Herman Payne. He admitted this in a statement given to the police prior to trial, and confirmed it when he testified at the trial. The fact that the defendant struck James Darby instead does not diminish the intent he had to kill. The doctrine of transferred intent provides that when a person shoots at one person with the specific intent to kill or inflict great bodily harm and accidently kills or inflicts great bodily harm upon another person, if the killing or inflicting of great bodily harm would have been unlawful against the person actually intended to be shot, then it would be unlawful against the person actually shot, even though that person was not the intended victim. State v. Jasper, 28,187 (La.App. 2 Cir. 6/26/96), 677 So.2d 553, writ denied, 96-1897 (La.2/21/97), 688 So.2d 521.
In the present case, the defendant admitted his intent to kill or inflict great bodily harm on Herman Payne. He also testified that he actually fired the gun at Herman Payne. The testimony of Michael Norfleet and Gerald Grissum revealed the defendant's anger and search for revenge. Michael pointed out the intended victim to the defendant. Michael and Gerald further stated that the defendant fired the weapon into the crowd. Thus, the State produced sufficient evidence for the jury to conclude, beyond a reasonable doubt, that the defendant had the specific intent to kill or inflict great bodily harm to Herman Payne. The intent was transferred when the defendant shot the victim instead of Herman Payne. Id.
This assignment is without merit.

II. ASSIGNMENT OF ERROR NO. 2
The defendant further suggests that the trial court erred in allowing the State to introduce evidence concerning other crimes.
The defendant complains that the prosecutor impermissibly referred to other crimes evidence during her cross-examination of defendant's character witness, Vanette Murray. During direct examination by defense counsel, Ms. Murray stated that she had taught the defendant while he was a student at Carter G. Woodson Middle School. She described the defendant as a well-behaved student. She testified the defendant was obedient, willing to learn, truthful and very respectful. On cross-examination, the prosecutor asked Ms. Murray if she recalled an incident where the defendant brought a *510 knife to school. Ms. Murray stated that she did not recall such an incident. The prosecutor then sought to introduce a document bearing the witness' signature which indicated the defendant was disciplined for bringing a knife to school. Although the defendant objected, the trial court allowed the prosecutor to show the document to the witness. After reviewing the document, the witness still did not remember the incident.
Generally, evidence of other crimes is not admissible. La. C.E. article 404. However, evidence of a pertinent trait of the defendant's character may be offered by him or by the prosecution to rebut the defendant's character evidence. La. C.E. article 404(A)(1). When a defendant chooses to put his character at issue by introducing evidence of his good character, the state is entitled to introduce evidence of the defendant's bad character in rebuttal and may cross-examine defendant's character witness about his or her knowledge of defendant's particular conduct, prior arrests, or other acts relevant to the moral qualities pertinent to the defendant's crime. State v. Sterling, 95-673 (La.App. 5 Cir. 2/27/96), 670 So.2d 1316.
Defendant's character witnesses, Ms. Connie Bell, Ms. Vanette Murray, and Mr. John Doyle, all testified that the defendant was an obedient student who respected others and did not cause trouble. They stated that the defendant was truthful, quiet and easygoing. As the defendant placed his character in question, the State was entitled to attempt to introduce evidence rebutting the defendant's witnesses' testimony. After Ms. Murray testified that the defendant was respectful, wellbehaved and not a discipline problem, the State was entitled to question Ms. Murray about the knife incident. Accordingly, the trial court did not err when it allowed the State to question Ms. Murray about a specific incident in which the defendant was disciplined for bringing a knife to school.
This assignment is without merit.

III. ASSIGNMENT OF ERROR NO. 3
The defendant contends the trial court erred in denying his motion to quash and motion in arrest of judgment based upon the unconstitutionality of La. R.S. 14:30(A).
The defendant was charged with and convicted of first degree murder in violation of La. R.S. 14:30(A)(1). The statute, in pertinent part, defines first degree murder as "the killing of a human being ... [w]hen the offender has specific intent to kill or to inflict great bodily harm and is engaged in the perpetration or attempted perpetration of... drive-by shooting." "Drive-by shooting" is defined as "the discharge of a firearm from a motor vehicle on a public street or highway with the intent either to kill, cause harm to, or frighten another person." La. R.S. 14:37.1.
The defendant argues that the definition of "drive-by shooting" is vague and overly broad. He specifically refers to the terms "public", "cause harm", and "frighten" as being vague and overly broad.
The constitutional guarantee that an accused shall be informed of the nature and cause of the accusation against him requires that penal statutes describe unlawful conduct with sufficient particularity and clarity that ordinary persons of reasonable intelligence are capable of discerning its meaning and conforming their conduct thereto. U.S. Const. Amend. XIV, § 1; La. Const., Art. I, §§ 2,13; State v. Byrd, 96-2302 (La.3/13/98), 708 So.2d 401, cert. denied, Peltier v. La., ___ U.S.___, 119 S.Ct. 179, 142 L.Ed.2d 146 (1998). In determining the meaning of a statute and hence its constitutionality, penal statutes must be "given a genuine construction, according to the fair import of their words, taken in their usual sense, in connection with the context, and with reference to the purpose of the provision." La. R.S. 14:3; State v. Pierre, 500 So.2d 382 (La.1987). A statute is unconstitutionally vague if an ordinary person of reasonable intelligence is not capable of discerning its meaning and conforming his conduct to it. In addition, a penal statute must provide adequate standards by which the guilt or innocence of the accused can be determined. State v. Greco, 583 So.2d 825 (La.1991).
The terms of which defendant complains are not vague and/or ambiguous. A person *511 of reasonable intelligence can easily discern the meanings of "public", "cause harm", and "frighten", apply them to the context of the statute and conform their conduct thereto. The word "public" is used to describe "street" and "highway" in the statute. "Public" has been defined as meaning "open to common use." Black's Law Dictionary, Fifth Edition, p.1104. "Harm" is defined as "injury or damage." Webster's II New Riverside University Dictionary (1988), p.565. "Frighten" means to cause someone to become fearful or afraid. Id., p.507. The use of these terms in the definition of "drive by shooting" is not vague. By way of comparison, in State v. Griffin, 495 So.2d 1306, 1309 (La.1986), the court in discussing certain gambling legislation stated:

The term "public" is of such generally accepted meaning as to give adequate notice of the concept being described and intended by the legislature. Also, this Court has in the past interpreted the meaning of "public" with the context of other statutes in the criminal code. In State v. Muller, 365 So.2d 464 (La.1978), we determined while examining our obscenity statute an enclosed supermarket is not "a location or place open to the view of the public or the people at large such as a street ... [or] ... sidewalk ..." [Emphasis added.]
These terms proscribe conduct in which a person, riding in a vehicle on street or highway which is open for common use, opens fire upon another person with the intent to kill or cause injury or fear to the other person. Thus, the statute is not unconstitutionally vague.
The defendant also suggests that the statute is overly broad. Individuals are protected from incursions by the state into certain areas of their lives by the Fourteenth Amendment of the United States Constitution, and a statute would be overbroad and, thus, constitutionally defective, if it extends state criminal authority beyond the proper reach of government into one of these protected areas. In order for the principle of overbreadth to apply, a constitutionally protected right must be abridged by the prosecution. State v. Griffin, 495 So.2d 1306 (La. 1986). Overbreadth invalidation of statutes is generally inappropriate when the allegedly impermissible applications of the challenged statute affect conduct rather than speech. Broadrick v. Oklahoma, 413 U.S. 601, 93 S.Ct. 2908, 37 L.Ed.2d 830 (1973); State v. Neal, 500 So.2d 374 (La.1987). A person to whom a statute may constitutionally be applied does not have standing to question the constitutionality of the statute on the ground that it may conceivably be applied unconstitutionally to others, in other situations not before the court. Broadrick v. Oklahoma; State v. Sandifer, 95-2226 (La.9/5/96), 679 So.2d 1324.
In the present case, the defendant's alleged criminal actions it squarely within the proscribed conduct of the statute. Thus, the defendant does not have standing to question the constitutionality of the statute on overbreadth issues.
The trial court did not err in concluding the statute is constitutional and denying defendant's motion to quash and motion in arrest of judgment.
This assignment is without merit.
Accordingly, the defendant's conviction and sentence is affirmed.
CONVICTION AND SENTENCE AFFIRMED.