Dear Senator Cox:
You have requested an opinion of the Attorney General to the following questions:
Is the tax on charities for bingo operations constitutional?
 Has the State pre-empted the regulations on bingo games and fees that local governments can charge?
 More particularly, can local government charge greater fees and/or create more onerous regulations than State law provides?
In answer to your first question, I draw your attention to Article 7, Section 21 of the Louisiana Constitution of 1974. It provides, in pertinent part the following:
"Section 21.
 In addition to the homestead exemption provided for in Section 20 of this Article, the following property and no other shall be exempt from ad valorem taxation:
* * *
 (B)(1)(a) Property owned by a nonprofit corporation or association organized and operated exclusively for . . . charitable . . . purposes, no part of the net earnings of which inure to the benefit of any private shareholder or member thereof and which is declared to be exempt from federal or state income tax;"
As can be seen from the above language, property owned by qualifying charitable organizations is exempt from ad valorem taxes. In order to qualify for this exemption, the following criteria must be met:
 1. The organization must be a nonprofit corporation or association organized and operated exclusively for charitable purposes.
 2. No part of the net earnings of the organization can inure to the benefit of any private shareholder or member thereof.
 3. The organization must be declared to be exempt from federal or state income tax.
An ad valorem tax levied on property owned by a charitable organization meeting the above requirements would, in our opinion, constitute an unconstitutional tax.
LSA-R.S. 47:305.14 addresses sales and use tax exemptions. It provides, in pertinent part, the following:
 "A. (1)The sales and use taxes imposed by R.S. 47:302 and 47:331
shall not apply to sales of tangible personal property at, or admission charges for, outside gate admissions to, or parking fees associated with, events sponsored by . . . charitable . . . organizations, which are nonprofit, when the entire proceeds, except for the necessary expense connected therewith, are used for . . . charitable . . . purposes, including the furtherance of the . . . charitable . . . purpose of the organization.
* * *
 (3) This Section shall not be construed to exempt any organization or activity from the payment of sales or use taxes otherwise required by law to be made on purchases made by these organizations."
As can be seen from the above, nonprofit charitable organizations meeting the requirements contained in Section 305.14(A) are exempt from the payment of sales and use taxes. This exemption is limited to the purposes set forth in this statute, which do not include purchases made by the charitable organizations.
The applicability of the state sales and use tax exemption granted in LSA-R.S. 47:305.14 to local government is controlled by LSA-R.S. 33:2716.1(B). It provides:
 "(B) No exemption from state sales and use tax granted subsequent to the effective date of this Act and granted pursuant to the provisions of Chapters 2 or 2-A of Title 47 of the Louisiana Revised Statutes of 1950 shall be applicable to any sales and use tax levied by any local governmental subdivision or school board unless the state exemption specifically provides that it applies to such sales and use tax levies. In the absence of any such specific application of the state exemption to sales and use tax levies on any local governmental subdivision or school board, any state exemption granted after the effective date of this Act and granted pursuant to the provisions of Chapters 2 or 2-A of Title 47 of the Louisiana Revised Statutes of 1950 shall be applicable only to the levy and collection of the state sales and use tax."
The act referred to in the above quotation is Act No. 205
of the 1978 Regular Session of the Louisiana Legislature, the effective date of which was June 29, 1978. The sales and use tax exemption afforded charitable organizations in LSA-R.S.47:305.14 was enacted by Act No. 89 of the 1973 Regular Session of the Louisiana Legislature. Notwithstanding the fact that the state exemption in Section 305.14 fails to specifically provide that it applies to sales and use taxes levied by local governmental subdivisions or school boards, the exemption was enacted prior to June 29, 1978. Thus, pursuant to LSA-R.S.33:2716.1(B), the subject exemption applies to sales and use taxes levied at the local level.
With regard to your second question, Article 12, Section 6 of the Louisiana Constitution of 1974 delegates to the legislature the exclusive power to regulate and control gambling. Pursuant to Act No. 609 of the 1968 Regular Session, (LSA-R.S. 33:4861.1, et seq.) the legislature exercised its power by enacting the Charitable Raffles, Bingo and Keno Licensing Law. This law constitutes a delegation of police power to local government to license, regulate, and control raffles, bingo or keno games sponsored by charitable organizations, or, alternatively, to prohibit such games of chance, altogether. See LSA-R.S.33:4861.3.
While local government subdivisions may not authorize gaming practices prohibited by state law, our Supreme Court has recognized their power to regulate and control such games of chance more restrictively than is effected by the state statutory regime. In Theriot v. Terrebonne Parish Police Jury436 So.2d 521 (1983), Rehearing Denied, the Court held:
 "La. R.S. 33:4861.10 places the responsibility for the control and supervision of raffles, bingo or keno games and for the promulgation of rules and regulations governing the holding, operating and conducting of such games squarely on the municipality or the governing body of any parish issuing licenses to charitable organizations. This, coupled with La. R.S. 33:4861.3 which places the outset decision of whether to permit or prohibit charitable raffles, bingo or keno within the parish on the local governing authority, convinces us that the more restrictive local ordinance is in keeping with, rather than contrary to, the legislative authorization. Furthermore, the scheme set out by the Legislature by which local governing authorities are to determine whether and how restrictively to authorize charitable bingo is in keeping with the Legislature's constitutional mandate (La. Const. Art. 12 § 6) to define and suppress gambling."
In 1986, the Legislature passed Act No. 752 (LSA-R.S.40:1485.1, et seq.), the stated purposes of which were to decrease the potential for fraud in charitable games of chance and to increase compliance with the provisions of the Charitable Raffles, Bingo, and Keno Licensing Law and other laws and regulations. To effectuate these purposes, the law provides for a state licensing system for charitable organizations and manufacturers and distributors of supplies and equipment, and the creation of the Division of Charitable Gaming Control (Division) within the Office of State Police, Department of Public Safety and Corrections.
The Division's functions, duties, and responsibilities are set forth in LSA-R.S. 40:1485.4 and include the issuance and renewal of annual state licenses, the assessment and collection of license, renewal, and miscellaneous fees associated with gaming activities, the enforcement of all provisions of law and regulations relative to charitable gaming, and the establishment and assessment of penalties for violations of said laws and regulations.
A review of Act 752, as amended, reveals no preemptive language which would limit the rule-making and regulatory powers of local government over charitable bingo operations. Neither does it limit the fees local government may assess for licensure. To the contrary, the primary purpose for the State's regulation of charitable gaming is to enforce the local charitable licensing law.
While local licensing fees are not limited by the enactment of Act 752, the power of local government to set license fees is not completely unfettered. The fee must be limited to the legitimate cost of regulation and the necessary or probable expenses of licensing, inspecting, and regulating the business to which it applies. If the fees collected materially exceed the cost of regulation, they are considered, by law, an unconstitutional tax. See Attorney General Opinion No. 90-677, copy enclosed.
We hope this has answered your inquiries. If we may be of further assistance, please do not hesitate to contact us.
Yours very truly,
 RICHARD P. IEYOUB Attorney General
 BY: ROBERT E. HARROUN, III Assistant Attorney General
RPI/REH, III:lbw-000R